CASE 39—PETITION ORDINARY—FEBRUARY 26.

# Sayre vs. Louisville Union Benevolent Association.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. See the opinion for the provisions of the act incorporating the association, and the by-laws adopted by it.

2. The power of a corporation to make by-laws is limited by the nature of the corporation and the laws of the country. It can make no rule contrary to law, good morals, or public policy.

3. Public policy does not forbid the combination of a number of workmen, who are bound by no contract, for the purpose of obtaining *reasonable* prices for their labor. So, common carriers may guard themselves against undue competition reducing freights below a fair compensation.

4. An agreement by the members that no one should carry freight for less than the rate fixed by the association, without reference to the question whether the rate was reasonable or not, is illegal.

JEFF. BROWN for appellant.

C. RIPLEY for appellees.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT:

The Louisville Union Benevolent Association was incorporated by an act of the Legislature, with authority to afford relief and assistance to its sick or disabled members, and to the families of deceased members; to sue and defend, and acquire, hold, and dispose of any kind of property; to " create a fund by initiation fees, dues, contributions, or otherwise;" "to adopt such rules for their mutual interest as individuals, and as common carriers, as to them shall seem proper and promotive of mutual confidence and good will; and to recover all such fees, fines, or contributions as any member may be liable by the terms of their by-laws to pay, in the same manner as other debts due to the association; and to make by-laws for their government, and for prescribing the terms of admission and continuance of members: *Provided,* Such by-laws shall not be repugnant to the laws and constitution of the. Commonwealth."

The association ad >pted by-laws, excluding from membership any person who has not been a captain, owner, or part

Duvall.
1du143
91 342

1du143
106 880
106 892

1du143
e133 803

owner of a steamboat on the Mississippi or Ohio river, or tributaries; declaring that no member "shall go into any river or trade and work for less than the wages, nor take, bargain for, or carry any freight for less than the established rate in the trade;" and that any member so doing shall be fined not less than one nor more than ten hundred dollars; prohibiting the members from employing agents who do not belong to the association, or to some association acting in concert with it; prohibiting members from advertising or working for any boat not represented in this or some other association acting in concert with it; requiring each member to pay certain monthly dues, and certain tonnage dues for each trip he may make with any steamer, and certain fines for non-attendance, and additional fines for failing to pay fines or other dues; and making provision for the relief of sick or disabled members, and for the families of deceased members, and other provisions which we need not notice.

The appellant, Sayre, became a member of the association, and, like the other members, expressed his consent to the by-laws by subscribing his name to them.

The association sued him for the sum of $329 45. The claim consists of tonnage and monthly dues, to the amount of $19 45; fines, for not paying said dues, to the amount of $60; and a fine of $250 for carrying freight for less than the established rate.

A demurrer to the petition having been overruled, the defendant answered, that the association was not authorized to make said by-laws, and that the same were illegal, and presented other defenses, which were not sustained by proof and need not be noticed.

A judgment was rendered for the sum claimed in the petition, from which Sayre appeals.

The power of a corporation to make by-laws for the government of its members does not authorize it to violate law, nor to require its members to do so. The power is limited by the nature of the corporation and the laws of the country. It can make no rule which is contrary to law, good morals, or public policy. (*Angell & Ames on Corp.*, sec. 335, *and cases cited.*)

To what extent the courts can, or should, interfere in the never ceasing contest between capital and labor, between buyers and sellers, between consumers and producers, is a question of some difficulty. In the case of *Regina vs. Rowlands*, the court of queen's bench is reported to have seen no objection to Justice Erlis' instructions to the jury, in which he said : " The law is clear that workmen have a right to combine for their own protection, and to obtain such wages as they choose to agree to demand. \* \* \* But I consider the law to be clear so far, only, as while the purpose of the combination is to obtain a benefit for the parties who combine ; a benefit which, by law, they can claim. I make that remark because a combination for the purpose of injuring another is a combination of a different nature, directed personally against the party to be injured; and the law allowing them to combine for the purpose of obtaining a lawful benefit to themselves gives no sanction to combinations which have for their immediate purpose the hurt of another. The rights of workmen are conceded ; but the exercise of free will and freedom of action, within the limits of the law, is also secured equally to the masters. The intention of the law is at present to allow either of them to follow the dictates of their own will with respect to their own actions and their own property; and either, I believe, has a right to study to promote his own advantage, or to combine with others to promote their mutual advantage." (79 *Eng. C. L. R.*, 685, *note a.*) The doctrine of that case seems to be, that, as a workman, who is bound by no contract, may lawfully demand any wages that he may choose, any number of workmen may lawfully combine for the same purpose. And in *the Commonwealth vs. Hunt et al.* (4 *Metc. Mass. R.*, 111), the reasoning of the court apparently leads to the same conclusion, though the point was not decided.

But in New York, under a statute declaring that " if two or more persons shall conspire to commit any act injurious to trade or commerce, they shall be deemed guilty of a misdemeanor," it seems to have been held that all combinations of workmen to raise their wages are necessarily injurious to trade

or commerce, and indictable as misdemeanors under the statute; and the court expressed the opinion that, by the common law, such combinations were indictable as conspiracies. (*The People vs. Fisher*, 14 *Wend.*, 19.)

It seems to be doubtful whether either of those positions is correct. It is entirely consistent with the interest of the public that labor shall be fairly rewarded. If the employer of a number of workmen should refuse to pay them fair wages, why may they not, if bound by no contract, combine for the purpose of obtaining reasonable prices for their labor? We do not perceive that the public would be injured by it, nor any principle upon which it can be condemned as illegal. But suppose that four cents per bushel is a reasonable price for mining coal, and that the miners of the country should combine for the purpose of extorting eight cents per bushel; that would certainly be injurious to the public, whilst it would not be supported by any moral right on the part of the conspirators. Mr. Wharton lays it down, upon the authority of several cases, that combinations to prejudice the public, by unduly elevating or depressing the prices of wages, of tolls, or of any merchantable commodity, are indictable as conspiracies. (1 *Am. C. L.*, 786.) And Mr. Chitty places conspiracies to injure public trade upon the same ground as conspiracies " to affect public health, to violate public policy, to insult public justice, or to do any act in itself illegal." (3 *Chit. Crim. Law*, 1139.)

In this case, however, we need not go so far as the last mentioned authorities seem to justify. A common carrier cannot, like a merchant or mechanic, consult his pleasure or caprice as to the conduct of his business. The law makes it his duty, when he can conveniently do so, to receive and carry goods for any person whatsoever, for a reasonable hire. (*Story on Bailments, sec.* 508.) The public interest does not, we believe, forbid carriers from guarding themselves against undue competition, reducing freights below the standard of fair compensation; and we should hesitate to condemn an agreement between carriers not to carry goods for less than a certain, reasonable price. But in the case under consideration, the members agreed that no one should carry freight for less than

the rate fixed by the association, without reference to the question whether the rate was reasonable or not. We find nothing in the charter from which it can be reasonably inferred that the Legislature meant to authorize such a combination.

In our opinion, the by-law under which the fine of $250 was imposed upon Sayre was illegal and void, notwithstanding his assent thereto; but the association is entitled to a judgment for the residue of the money claimed in the petition.

The judgment is reversed, and the cause remanded, that judgment may be rendered in conformity to this opinion.