## Blanford et al. v. Press Pub. Co.

Feb. 28, 1941.

Eaton & Eaton and George C. Burton for State Federation of Labor as amicus curiæ, E. Palmer James and John Young Brown for appellants.

Boyd & Boyd for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing original and affirming on cross-appeal.

The judgment appealed from permanently enjoined the appellants from doing any act in furtherance of a secondary boycott theretofore inaugurated by them against appellee's newspaper publishing business, and conducted by publishing handbills and newspaper advertisements, and interviewing appellee's customers. The judgment denied an injunction against Carl Bartlett, and from that portion of the judgment the appellee has prayed a cross-appeal.

The pleadings and proof disclosed that appellants are representatives of two labor unions composing the Paducah Allied Printing Trades Council; that a dispute existed between the Unions and appellee over the latter's right to use the union labels; and that in order to compel appellee to unionize its shop, a demand which appellee asserted its willingness but inability to comply with, the appellants, by use of the means referred to, publicized the controversy with distressing results to appellee's business. The contents of the handbills, substantially the same as the newspaper advertisements, were as follows:

"Paducah Allied Printing Trades Council
"Paducah, Kentucky

"C. L. Blanford, Chairman
"Carl Bartlett
"James Evans
"Byron Tucker
"Ralph Schwering
"Ernest Russell

"To Whom It May Concern:

"The Allied Printing Trades Council of Paducah, Kentucky, wishes to inform all advertisers and subscribers that the 'Paducah Press' is not printed by union labor and therefore it is denied the use of the Allied Label.

"We urge your co-operation in patronizing firms that are employing Union Printers and Union Pressmen.

"The following firms in Paducah employing Union Printers and Union Pressmen, and using the Allied Label are:

The Paducah Sun-Democrat

Billings Printing Company
Leak's Printing Company
Sinclair Printing Company
Paducah Printing Company
Hunter H. Martin, Printers
Young Printing Company

"Thanking you in advance for any cooperation you can give us on this subject and hoping you will always demand the Allied Label on all forms of printing matter, we remain,

"Respectfully yours,

"Paducah Allied Printing Trades Council."

Emphasized in the petition, and forming the basis of the decree, was the fact that none of the appellants was in appellee's employ, from which was deduced the conclusion that no labor dispute, within the applicable proper definition of that term, existed, and that in consequence, the conspiracy to boycott, and thus injure appellee's business, was unlawful. Otherwise there would have been no basis for the injunction, since it has long been the law of this state that employees, as well as employers, have the right to combine for the purpose of promoting their own interests, and, that, in furtherance thereof, employees have the right to use all peaceful means to persuade others not to patronize or accept employment from the employer with whom the dispute exists. If the agreement forming the basis of the combination was in restraint of trade, it was illegal in the sense that the courts would not enforce it, but, so long as the purpose of the combination was to promote the legitimate interests of the participants, and the means employed were not unlawful, the party injured thereby was without remedy. Specifically, this Court has held that employees may legitimately organize "to promote their mutual advantage"; to secure fair wages; to maintain high standards of workmanship; to elevate the material, moral, and intellectual welfare of the membership; to secure the abolition of child labor, the "trucking" system, tenement house labor and prison labor; to secure better working conditions; to secure better hours; to induce employers to establish usages with respect to wages and working conditions which are fair, reasonable, and humane; and to achieve "the fundamental right to contract collectively with the employer."

To accomplish these legitimate ends, a labor organization may strike; may indulge in peaceful picketing; may use any peaceful means, not partaking of fraud, to induce others to become members; may acquaint the public with facts which it regards as unfair, publicize its cause, and use persuasive inducements to bring its own policies to triumph; when engaged in a lawful strike its members may join in a crowd to persuade other men who propose to work not to take their places; its members have a lawful right to assemble, to address their fellowmen, and to endeavor in a peaceful, reasonable, and proper manner to persuade them regarding the merits of their cause, and to enlist sympathy, support, and succor in the struggle for legitimate labor "ends"; and, finally, its members may assemble and agree to pursue, and pursue, any legal means to gain their ends, that is, use persuasive powers in a peaceful way. Sayre v. Louisville Union Benevolent Association, 1 Duv. 143, 85 Am. Dec. 613; Hetterman v. Powers, 102 Ky. 133, 43 S. W. 180, 39 L. R. A. 211, 80 Am. St. Rep. 348; Ætna Insurance Company v. Commonwealth, 106 Ky. 864, 51 S. W. 624, 45 L. R. A. 355; Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S. W. 1018, 39 L. R. A., N. S., 1203; Hudson v. Cincinnati, N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A., N. S., 184, Ann. Cas. 1915B, 98; Diamond Block Coal Co. v. United Mine Workers of America, 188 Ky. 477, 222 S. W. 1079; Piercy v. Louisville & Nashville R. Co., 198 Ky. 477, 248 S. W. 1042, 33 A. L. R. 322; Alsbrook v. Commonwealth, 243 Ky. 814, 50 S. W. (2d) 22; Newton v. Commonwealth, 244 Ky. 41, 10 S. W. (2d) 18; Music Hall Theatre v. Moving Picture Machine Operators Local No. 165, 249 Ky. 639, 61 S. W. (2d) 283; Hotel, Restaurant & Soda Fountain Employees Local Union No. 181 v. Miller, 272 Ky. 466, 114 S. W. (2d) 501; Commonwealth v. Compton, 259 Ky. 565, 82 S. W. (2d) 813. See also "The Development of Labor Law in Kentucky" by George Neff Stevens, Vol. XXVIII Kentucky Law Journal, published January, 1940, in which article the authorities above cited are annotated to the rights and means discussed.

From the principles to be gathered from the authorities referred to, it cannot be doubted that if appellants had been employees of appellee, no basis for the issuance of an injunction would have existed, since they em-

ployed neither violence nor intimidation in their efforts to promote the legitimate interests of the organizations of which they were members.

But this Court, in protecting the rights of owners to conduct their businesses without interference from strangers, held illegal any coercive action directed against them by labor organizations, none of whose members had been in such owners' employ. Such protection appeared to be justified sociologically and morally on the theory that if one's own employees were satisfied with the wages which they received and the conditions under which they worked, both he and they were entitled to proceed in the orderly conduct of their affairs without molestation. It also appeared to be justified under the guarantees of the Fourteenth and Tenth Amendments. Interferences with such relationships, sometimes termed "secondary boycotts," were expressly denounced by this Court in the case of Hotel, Restaurant & Soda Fountain Employees Local Union No. 181 v. Miller, supra. They were also held to be illegal by the Supreme Court of the United States and many state tribunals. See dissenting opinion of Mr. Justice Roberts in the case of United States of America v. William L. Hutcheson et al., 61 S. Ct. 463, 85 L. Ed. . . . . See, also, Duplex Printing Co. v. Deering et al., 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, in which secondary boycotts were defined, and, notwithstanding the provisions of the Clayton Act, 38 Stat. 730, held to be violative of the Sherman Act, 15 U. S. C. A., Sections 1-7, 15 note, and enjoinable when operating in restraint of interstate commerce. However, on February 3, 1941, the Supreme Court of the United States in the case of United States v. Hutcheson, supra [61 S. Ct. 466, 85 L. Ed. . . . ], held that the Norris-LaGuardia Act, 29 U. S. C. A., Section 101 et seq., had "removed the fetters upon trade union activities," a result allegedly sought to be accomplished by the Clayton Act and "explicitly formulated the 'public policy of the United States' in regard to the industrial conflict, and by its light established that the allowable area of union activity was not to be restricted, as it had been in the Duplex case, to an immediate employer-employee relation." And further:

"So long as a union acts in its self-interest and does not combine with non-labor groups, the licit and the illicit under Section 20 [Clayton Act, 29 U. S. C. A.,

Section 52] are not to be distinguished by any judgment regarding the wisdom or unwisdom, the rightness or wrongness, the selfishness or unselfishness of the end of which the particular union activities are the means.''

On April 22, 1940, in Thornhill v. State of Alabama, 310 U. S. 88, 60 S. Ct. 736, 739, 84 L. Ed. 1093, the Supreme Court had held invalid as violative of the constitutional guarantee of the freedom of speech a statute prohibiting individuals from picketing and ''without a just cause or legal excuse therefor'' from going near or loitering about the business premises of others ''for the purpose, or with intent of influencing, or inducing other persons not to trade with, buy from, sell to, have business dealings with, or be employed by'' the owners of such premises. Said the Court:

''In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution.''

On the same date and for the same reasons, in the case of Carlson v. People of State of California, 310 U. S. 106, 60 S. Ct. 746, 84 L. Ed. 1104, the Supreme Court held invalid a similar county ordinance; and on February 10, 1941, in the case of American Federation of Labor et al. v. Swing et al., 61 S. Ct. 568, 570, 85 L. Ed. ..., expressly held a secondary boycott, peacefully conducted, to be lawful, saying:

''We are asked to sustain a decree which for purposes of this case asserts as the common law of a state that there can be no 'peaceful picketing or peaceful persuasion' in relation to any dispute between an employer and a trade union unless the employer's own employees are in controversy with him.

''Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a state has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even these essential powers are unfettered by the requirements of the Bill of Rights. The scope of the Fourteenth Amendment is not confined by the notion of a particular state regarding the wise limits of an injunction in

an industrial dispute, whether those limits be defined by statute or by the judicial organ of the state. A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. The interdependence of economic interest of all engaged in the same industry has become a commonplace. American [Steel] Foundries v. Tri-City [Central Trades] Council, 257 U. S. 184, 209, 42 S. Ct. 72, 78, 66 L. Ed. 189, 27 A. L. R. 360. The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ. Communication by such employees of the facts of a dispute, deemed by them to be relevant to their interests, can no more be barred because of concern for the economic interests against which they are seeking to enlist public opinion than could the utterance protected in Thornhill's case.''

See, also, Milk Wagon Drivers Union, etc., v. Meadowmoor Dairies, Inc., 61 S. Ct. 552, 85 L. Ed. ..., decided by the same court February 10, 1941, in which the powers of the state to interfere by injunction in labor disputes are prescribed and limited.

Since the Supreme Court is the final interpreter of the Federal Constitution, no distinction may hereafter be drawn by a state court between the acts which may be committed by employees in furtherance of their interests and those which may be committed by non-employee members of a labor union in the furtherance of its interests. Hence, members of any labor union, so long as they refrain from acts of violence, may not be enjoined from picketing the premises of any person against whom the union has a grievance, or from conducting a boycott against his business, notwithstanding the consequences to him, his accord with his own employees, or his inability to grant the demands made upon him by the union.

Since the appellants are members of bona fide labor unions, and, in attempting to compel the unionization of appellee's printing establishment, did not resort to acts of violence, it is wholly immaterial that by advertisements and personal interviews in which the facts

were stated and consequences intimated, they induced many of appellee's patrons to withhold their patronage. Appellants were exercising rights guaranteed to them by the Constitution, as construed by the Supreme Court, and lesser courts are powerless to afford appellee any relief.

We have refrained from reciting the evidence in detail, since the controlling facts above alluded to are not controverted. Notwithstanding appellee's asserted willingness and inability to unionize his shop, we are not prepared to say that appellants' motives are subject to criticism, or that their actions were unjustified. Apparently they were committed in the furtherance of what appellants believed to be a worthy cause. As before stated, the basis of the injunction granted was the absence of any relationship which clothed appellants with any right to interfere with the conduct of appellee's affairs. Clothed with the protection of constitutional guarantees, no other justification was needed. Accordingly, the judgment is reversed on the original appeal with directions to dismiss the petition, and affirmed on the cross-appeal.