Argued March 27; affirmed June 4, 1946

# PETERS ET AL. *v.* CENTRAL LABOR COUNCIL ET AL.

(169 P. (2d) 870)

[ 1 ]

Martin W. Hawkins, Judge.

*Will H. Masters* and *Hugh L. Barzee,* both of Portland, for appellants.

*James Landye,* of Portland (Green & Landye and Nels Peterson, of Portland, on brief), for respondents.

BELT, C. J.

This is a suit to enjoin the defendant labor unions from picketing. From a decree dismissing the suit, the plaintiffs appeal.

Plaintiffs are copartners engaged in the business of manufacturing and selling steel products. Much of these products went into the channels of interstate commerce. Hence the substantive rights of the parties are affected by the National Labor Relations Act

(USCA, Tit. 29, ch. 7, §§ 151-166) enacted by Congress in 1935, otherwise known as the Wagner Act. The defendants, for the purpose of brevity, will hereafter be referred to as the union. There was no dispute between the employer and its employees. The employees were satisfied with wages, hours and working conditions. None of them desired to join the union. In the hiring of employees, no discrimination was made between union and non-union men. Plaintiffs' business was operated as an "open shop". The union—which had no member in the employ of the plaintiffs—contacted the Peters Company in September, 1944, with the purpose of unionizing the plant, and demanded the execution of a "closed shop" agreement. Peters Company refused to execute such agreement as by so doing it would have been guilty of an unfair labor practice under the Wagner Act. During all of the negotiations, however, plaintiffs expressed a willingness to sign the contract when and if a majority of their employees selected the union as their bargaining agent. The employers and employees petitioned the National Labor Relations Board for an election to determine who would be the bargaining agent, but such petitions were denied. The union, for obvious reasons, did not desire an election. On March 7, 1944, the union commenced picketing for the purpose of unionization, and the Peters Company was placed upon the "unfair list". There was no substantial evidence of violence and it will be assumed, so far as plaintiffs' plant is concerned, that the picketing was peaceful. Two women pickets patrolled in front of the Peters Company machine shop carrying banners: "Unfair to Metal Trades Council, Building Trades Council, Central Labor Council, A. F. of L." The union also had agents parked in automobiles near the plant. When material was delivered in company

trucks to plaintiffs' customers, the union cars would follow the trucks. The banners would then be changed so as to read: "Peters Co. Truck Unfair to Metal Trades Council, Building Trades Council, Central Labor Council, A. F. of L.", and the pickets would then patrol near the truck and in front of the customer's place of business. As a result of this kind of picketing, some of the customers cancelled their contracts with the company and refused to deal further with it as they did not want to become involved in any trouble with the union.

Soon after the picketing commenced, the employees organized an "Independent Employees Association" primarily for the purpose of securing an election to determine the right of bargaining agency. The "Employees Association" filed a petition with the Labor Board for an election. The union thereupon filed charges against the Peters Company asserting that the "Association" was company dominated and that the company was guilty of unfair labor practices. The Board investigated the "Employees Association" and ruled that it was company dominated. Plaintiffs claim this ruling was upon the technical grounds that the employees had been permitted to use a room and a blackboard of the company without charge and that a foreman of the company had been interested in the organization of the "Association". We think it is not proper in this proceeding to inquire into the reason for the ruling. Suffice it to say, the company, upon advice of counsel, agreed to and did post notices in its plant to all employees of the "disestablishment" of the "Association" and that it would not be recognized as a collective bargaining agent. After the "Association" was disbanded, the Board denied the petition for an election. Charges also were filed with the War

Labor Board that the Peters Company had raised wages of its employees in violation of the Wage Stabilization Act in that time and one-half was paid for work performed on Saturday and double time on Sunday notwithstanding the fact that the employees had been absent and failed to work in the other days of the week. The War Labor Board found that the Company had an unauthorized pay roll in excess of $30,000, but apparently believed the wages were inadvertently paid, as a penalty of only $100 was imposed. The Company, after its attention was called to such violation of the Wage Stabilization Act, immediately ceased this practice.

These matters, relative to alleged company domination and overpayment of wages and to other minor unfair labor practices, were never mentioned in the negotiations with the Peters Company prior to the picketing. It is believed that they were injected into the case merely as makeweight and will therefore be eliminated from consideration in determining whether injunctive relief should be granted. We prefer to consider what is deemed to be the real issues.

It is the contention of Peters Company that the sole purpose of the picketing was to coerce it into signing a "closed shop" agreement in violation of the National Labor Relations Act and therefore the picketing ought to be enjoined as being for an unlawful purpose. Peters Company asserts it is in the precarious position of being obliged either to sign the contract and thereby violate the law or to refuse to sign the same and have its business ruined.

Defendants contend that the picketing is for the unionization of plaintiffs' plant and not for the purpose of compelling the execution of a "closed shop" agree-

ment. The union urges that a "labor dispute" exists and that therefore no injunction should issue. It is further urged that even if there is no "labor dispute" the union, in the exercise of its constitutional guaranty of free speech, has the right to picket and thereby publicize to the world the attitude of the Peters Company toward organized labor.

██ The vital question is whether the facts disclose a "labor dispute" within the meaning of the Anti-Injunction Act of this state. (§§ 102-913 to 102-925, O. C. L. A.) If such dispute exists, no injunctive relief can be granted under the Act against peaceful picketing. This Act was patterned after the federal Norris-LaGuardia Act and has for its primary purpose the restriction of the power of courts to issue injunctions in labor controversies. The legislation was enacted as a result of the decision of the United States Supreme Court in *Duplex Printing Press Co. v. Deering,* 254 U. S. 443, 65 L. Ed. 349, 41 S. Ct. 172, 16 A. L. R. 196, construing the Clayton Act, USCA, Tit. 29, ch. 5, § 52, as granting immunity from injunctions only when the dispute was between employer and employee, and of the abuse of the injunctive process in industrial warfare. The historical background of the Norris-LaGuardia Act is reviewed in *Wallace v. International Ass'n of Mechanics,* 155 Or. 652, 63 P. (2d) 1090, and need not be repeated.

██ Since the Anti-Injunction Act of this state has been copied almost verbatim from the federal Act, this court should be strongly persuaded — although not bound—by the construction which the Supreme Court of the United States has given to such Act. 31 Am. Jur. 1012, § 365, 120 A. L. R. 322. However, the Supreme Court of the United States is bound by this court's con-

struction of the state Anti-Injunction Act, unless such construction is so narrow and restricted as to transcend constitutional grounds, in which event the Act as thus construed would be deemed unconstitutional. *Senn v. Tile Layers Protective Union*, 301 U. S. 468, 81 L. Ed. 1229, 57 S. Ct. 857; *Lauf v. Shinner & Co.*, 303 U. S. 232, 82 L. Ed. 872, 58 S. Ct. 578.

■ The United States Supreme Court has also given a very broad and liberal meaning to the words "labor dispute" as used and defined in the Norris-LaGuardia Act. *New Negro Alliance v. Sanitary Grocery Co.*, 303 U. S. 552, 82 L. Ed. 1012, 58 S. Ct. 703; *American Federation of Labor v. Swing*, 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855. It is also well settled that a "labor dispute" may exist within the meaning of the Act even though there is no relationship of employer and employee. *Markham & Callow v. International Woodworkers*, 170 Or. 517, 135 P. (2d) 727; *Wallace v. International Ass'n of Mechanics*, supra.

A "labor dispute" is defined in Ch. 355, Laws of Oregon for 1933, § 13, subd. 3 (codified as subd. 3, § 102-925, O. C. L. A.) as follows:

"The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, *regardless of whether or not the disputants stand in the proximate relation of employer and employe.*"

It is provided in subd. 1 of the above section of the Act that:

"A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft

or occupation; or have direct or indirect interests therein * * * whether such dispute is (a) between one or more employers or associations of employers and one or more employes or associations of employes, (b) between one or more employers or associations of employers and one or more employers or associations of employers, or (c) *between one or more* employes or *associations of employes* and one or more *employes* or associations of employes, or when the case involves any conflicting or competing interests in a labor dispute." (Italics ours)

The local Machinists Union—affiliated with some of the defendants herein—was certainly interested in the same industry or craft as that of the Peters Company. Unquestionably the defendants, under the statute, were proper parties to any labor dispute, if any existed.

■ It is not material, so far as the right to picket is concerned, that the employees of the Peters Company were satisfied with their wages, hours and working conditions and had no desire to join the union, if in fact a labor dispute existed within the meaning of the Act. *Wallace v. International Ass'n of Mechanics,* supra.

■ We agree with appellants that picketing, even though peacefully conducted, ought to be enjoined if it is for an unlawful purpose. Ever since the enactment of the Anti-Injunction Act, this court has consistently held that picketing must be for a lawful purpose. *Starr v. Laundry Union,* 155 Or. 634, 63 P. (2d) 1104; *Wallace v. International Ass'n of Mechanics,* supra; *Schwab v. Moving Picture Operators,* 165 Or. 602, 109 P. (2d) 600; *Markham & Callow v. International Woodworkers,* supra; *Stone Logging Co. v. In-*

*ternational Woodworkers,* 171 Or. 13, 135 P. (2d) 759. There is no decision of the United States Supreme Court to the contrary. The court, in *Dorchy v. Kansas,* 272 U. S. 306, 71 L. Ed. 248, 47 S. Ct. 86, said: "* * * a strike may be illegal because of its purpose, however orderly the manner in which it is conducted." It is significant that in those cases where the Supreme Court identified picketing with free speech no unlawful purpose of the picketing was involved. That courts may take into consideration the purpose of the picketing is established by the great weight of authority. See cases collated in note 116 A. L. R. 501. Also see Teller on Labor Disputes, Vol. I, § 114. Some courts, however, refuse to enjoin picketing even if it is for an unlawful purpose. *Wilson & Co. v. Birl,* 27 F. Supp. 915. In our opinion, the Norris-LaGuardia Act—which concerns procedural rights—was never intended to make lawful that which was unlawful before its enactment. Neither do we believe that free speech is involved where the labor objective is illegal. *R. H. White Co. v. Murphy,* 310 Mass. 510, 38 N. E. (2d) 685. Even free speech has its limitations. *Carpenters and Joiners Union v. Ritter's Cafe,* 315 U. S. 722, 86 L. Ed. 1143, 62 S. Ct. 807.

■ We also agree with appellants that the refusal of the Peters Company to execute a "closed shop" agreement, prior to the certification of a bargaining agent by the National Labor Relations Board, would not in itself justify the picketing of its plant. If the Company had signed such contract it would have been guilty of an unfair labor practice.

■ The purpose of the National Labor Relations Act is to secure to employees freedom in the selection of their own bargaining agent, and it guarantees to employees the right of self-organization. Under the Act,

employers are required to maintain strict neutrality. It is true the Act recognizes the validity of "closed shop" agreements if the bargaining agent has been selected by a majority of the employees and there has been no interference or domination by the employer. USCA, Tit. 29, ch. 7, § 158 (3). Here, the union had no semblance of a majority of the employees. There had been no election and certification of the bargaining agent by the Board, hence its demand for a "closed shop" agreement was wrong in that it required the doing of an unlawful act.

■ After the certification of the bargaining agent, the authorities are in conflict as to whether picketing for such purpose by a union other than the one which had been so certified can be enjoined. Whatever may be the rule in other jurisdictions, this court in *Markham & Callow v. International Woodworkers,* supra, decided that after an election and certification of the bargaining agent and a contract had been entered into with the A. F. of L. the minority union (C. I. O.) could not picket for the purpose of coercing the employer to breach its contract, as to do so was an illegal labor objective. In that case, the controversy was essentially jurisdictional and it involved interstate commerce. There was no controversy concerning hours, wages or working conditions. The court held that the dispute ended upon certification of the bargain agent.

If in such case there was a "labor dispute" between two rival unions over the right of collective bargaining prior to certification of the bargaining agent, it seems clear that such a dispute would exist at such time between a union and a disorganized group of employees over the right of representation. Especially is this true when an "open shop" is involved, as this method

of employment has long been looked upon by organized labor as in conflict with its legitimate objectives. As long as the employees of the Peters Company insisted upon the exercise of their undoubted right not to join the union, a controversy between them and the union over the terms or conditions of their employment and over the claimed right of the union to represent them as their collective bargaining agent existed. It is a dispute between the *employees* of Peters Company on the one hand and an association of employees, to wit, the union, on the other, involving the conflicting interests of those who believe in and those who are opposed to the idea of the "closed shop". The case falls within the definition of a "labor dispute" in our statute, and, since the statute has divested the courts of jurisdiction to issue injunctions against "giving publicity to the existence of, or facts involved in, any labor dispute, whether by advertising, speaking, patroling or by any other method not involving fraud or violence and/or intimidation", § 102-917, subd. 5, O. C. L. A., there is no occasion to determine whether the acts sought to be enjoined are an exercise of the right of freedom of speech and as such protected by the Constitution of the United States.

*Stone Logging Co. v. International Woodworkers,* supra, was decided on the same day as the Markham & Callow case and is based upon substantially the same state of facts. The court, referring to *Markham & Callow v. International Woodworkers,* supra, said: "In essence the two controversies were the same, except for the absence of an election and certification in the case at bar." It was also a contest between two rival unions —the C. I. O. and the A. F. of L.—to determine the right of representation of the employees. Notwith-

standing that there had been no election and certification, the employer entered into a union shop contract with the A. F. of L. The C. I. O. demanded that the employer bargain collectively with it and, upon the refusal of the employer so to do, the C. I. O. commenced picketing to compel it to desist such unfair labor practice. The injunction was dissolved as the court held a "labor dispute" existed.

■ We have said that under the facts of this case it would be unlawful to picket for the purpose of coercing plaintiffs to sign the "closed shop" agreement. It does not follow, however, that the union could not picket for the unionization of the plant even though none of its members were employees therein, as that is, according to the over-whelming weight of authority, a legal labor objective. *Lauf v. Shinner & Co.*, supra; *New Negro Alliance v. Sanitary Grocery Co.*, supra; *Fur Workers Union v. Fur Workers Union*, 308 U. S. 522, 84 L. Ed. 443, 60 S. Ct. 292; *United States v. Hutcheson*, 312 U. S. 219, 85 L. Ed. 788, 61 S. Ct. 463; *American Federation of Labor v. Swing*, supra; *Levering & Garrigues Co. v. Morrin*, 71 F. (2d) 284; *Blankenship v. Kurfman*, 96 F. (2d) 450; *Donnelly Garment Co. v. International L. G. W. U.*, 99 F. (2d) 309; *Taxicab Drivers Local Union v. Yellow Cab Operating Co.*, 123 F. (2d) 262; *American Furniture Co. v. I. B. of T. C. and H. of A.*, 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; Teller on Labor Disputes, Vol. I, § 211; 31 Am. Jur. 940, § 215.

Prior to the decision of the Swing case in the United States Supreme Court, it was held in the state of Washington that picketing for unionization could be enjoined where the union had none of its employees in the employ of the business picketed, but after such

decision the court reversed its position and held as stated in *O'Neil v. Building Service Employees International Union,* 9 Wash. (2d) 507, 115 P. (2d) 662, 137 A. L. R. 1102, that "It is now lawful for a labor union to peacefully picket the place of business of an employer, none of whose employees is a member of the picketing union, for the purpose of coercing such employees, against their will, to join that union." Also to the same effect, see *The State of Washington on the Relation of United Brotherhood of Carpenters and Joiners v. The Superior Court,* 24 Wash. (2d) 314, 164 P. (2d) 662, decided December 12, 1945, in which the court, referring to the O'Neil case, said: "We accepted the interpretation by the United States supreme court that, under the constitution, peaceful picketing derives from freedom of speech, and that any restriction of peaceful picketing must be limited to the grounds upon which abridgment of the liberty of discussion is justifiable." That the Supreme Court of Kentucky was likewise influenced by the Swing case, see *Blanford v. Press Pub. Co.,* 286 Ky. 657, 151 S. W. (2d) 440.

In *Schwab v. Moving Picture Operators,* supra, the authorities on such question, both federal and state, were well reviewed, and it is not deemed necessary to extend this opinion by reviewing them again. The Schwab case involved picketing for a "closed shop". The court recognized that the "Supreme Court of the United States in construing and applying the Norris-LaGuardia Act has held that the federal courts are without jurisdiction to enjoin peaceful picketing where the demand of the union is that an employer unionize his shop, the employer being willing but his employees refusing to join the union"; citing *Lauf v. Shinner & Co.,* supra; *New Negro Alliance v. Sanitary Grocery*

*Co.,* supra; and *Fur Workers Union v. Fur Workers Union,* supra. The court held, however, in the light of the record before it, that since the union refused to accept any of the employees of the plaintiff as members such action tended toward an unlawful monopoly of labor and that picketing for such purpose was unlawful and could be enjoined. In other words, the court held that there could not be a "closed shop" and also a "closed union". To the same effect, see *Harper v. Brennan,* 311 Mich. 489, 18 N. W. (2d) 905, decided since the Schwab case.

█ In the light of these authorities, it is clear that if no demand had been made for a "closed shop" agreement there would be no question about the right to picket for unionization. However, we cannot say that the sole purpose of the picketing was to coerce the Peters Company into signing the "closed shop" agreement. True, the union attempted in the first instance to organize the shop by an illegal, "short-cut" method, but that did not thereafter preclude it from picketing to accomplish such purpose by lawful means. *Denver Local Union v. Perry Truck Lines,* 106 Colo. 25, 101 P. (2d) 436; and *Park & Tilford Import. Corp. v. International Brotherhood of Teamsters, etc.,* 27 Cal. (2d) 599, 165 P. (2d) 891, decided January 31, 1946, are squarely in point and are adverse to the contention of the appellants. In the Colorado case it was contended there, as here, that the sole purpose of the picketing was to compel the execution of a "closed shop" agreement, but the court refused to say that such was the sole purpose of the union. It further held that, even assuming the picketing was for such purpose, there was no merit in the contention that it could be enjoined. Citing *Senn v. Tile Layers Protective Union,* supra; *Lauf v. Shin-*

*ner & Co.,* supra; and *American Furniture Co. v. I. B. of T. C. and H. of A.,* supra. We indulge in no such assumption in this case.

■ We do not approve the practice of the union in having its cars follow the trucks of the Peters Company when delivering products to its customers. It smacks too much of intimidation. In *Starr v. Laundry Union,* supra, and *Wallace v. International Ass'n of Mechanics,* supra, we disapproved, for the same reason, of a similar practice of agents of the union following employees' cars home. If the union does not cease the practice of following the trucks, application to the circuit court for injunctive relief may be made.

We express no opinion as to whether it is legal to picket a customer's place of business for the purpose of unionizing an employer's shop. That important and highly controversial question will be reserved for decision when and if it comes before us on a record where the intention of the union thus to picket is clearly manifested.

■ It need hardly be added that the court has been concerned in its consideration of this case solely with the question of the proper construction of our statute curtailing the power of the courts to issue injunctions in labor disputes. With the policy of the statute we have nothing to do. It has been held constitutional (*Starr v. Laundry Union,* supra) and our decision is governed by its provisions.

The decree is affirmed. Neither party will recover costs or disbursements.