## WHITT et al. v. STEPHENS.

Court of Appeals of Kentucky.

June 22, 1951.

Rehearing Denied March 28, 1952.

Kenneth A. Howe, Pikeville, for appellants.

H. R. Wilhoit, Grayson, Caldwell & Robinson, Ashland, for appellee.

MOREMEN, Justice.

This is an appeal from a judgment of the Carter Circuit Court enjoining the appellants and associates from picketing appellee's mine.

For some years appellee, George Stephens, had operated a coal mine on Little Fork Road in Carter County under the firm name of Moore Branch Coal Company. He had a union contract with Local Union No. 7762 of the United Mine Workers to which the national organization of the United Mine Workers of America was not a party. In March 1950, Stephens entered into a contract with the national U.M.W.A. whereby he agreed to pay a higher scale of wages. In the month of April 1950 appellee suspended operation of this mine and has not re-opened it. A month or two later Stephens opened a new drift mouth about a mile by road from the Moore Branch entry and here he chose to operate under the firm name of Joyce Coal Company under which he had operated in a nearby community. In view of the fact that there is a disagreement about whether or not this new operation is in fact merely a continuation of the old operation under a new name, we will quote from the testimony given by appellee.

"Q. 18 And when did you open this other drift mouth? A. I don't know exactly, but 'long in the spring.

"Q. 19 About how long after you closed down this company called Moore Branch? A. I would say a month or two. I don't know exactly.

"Q. 20 That drift mouth, isn't that on the same leasehold that the old Moore Branch was? A. The drift is on the same property.

"Q. 21 Drift mouth is on the same property? A. I mean where we come out of the mine.

"Q. 22 In other words, you are driving back toward Moore Branch? A. That's right.

"Q. 23 How far are you from old Moore Branch? A. I would say about 1500 feet.

"Q. 24 And operating in the same seam of coal? A. That's right.

"Q. 25 How far apart are these two drift mouths? By the road? A. Something like a mile.

"Q. 26 There is a highway? A. It is a county road.

"Q. 27 How far under the hill, not by road? A. Across the hill, pretty close. The map will show. I would say 1500 or 2000 feet across there.

He also testified that while the Moore Branch mine was on the Cornett heirs' property, the Joyce Coal Company mine was on a lease owned jointly by the Cornetts, Fraley, and appellee in partnership.

At the Joyce Coal Company mine were employed seven employees who were not members of the Union. Appellee did not employ members of the United Mine Workers of America, nor of Local Union No. 7762, to work in said mine. On August 21, 1950, members of the Union collected near the Joyce Coal Company mine and talked to appellee for the purpose of convincing him that he should employ its members and they also attempted to dissuade employees of the mine from working. Considerable evidence was taken on the trial of this case in an attempt to show that the employees of the mine were intimidated because of this congregation of men. But we find nothing in the record which indicates that this assembly was anything other than peaceful pickets devoid of violence or intimidation. Appellants contend that the facts present a case of peaceful picketing for a lawful purpose, and appellee insists that the picketing was neither peaceful nor for a lawful purpose and states that the law has changed since our decision in the case of Blanford v. Press Publishing Co., 286 Ky. 657, 151 S.W.2d 440, 444, which involved a question of whether or not peaceful picketing of a non-union shop by those not employed by the shop would be permitted in an attempt to force the employers to deal with the Union. In that opinion, after discussing a great number

of Kentucky decisions and opinions of the Supreme Court of the United States, it was said: "Since the appellants are members of bona fide labor unions, and, in attempting to compel the unionization of appellee's printing establishment, did not resort to acts of violence, it is wholly immaterial that by advertisements and personal interviews in which the facts were stated and consequences intimated, they induced many of appellee's patrons to withhold their patronage. Appellants were exercising rights guaranteed to them by the Constitution, as construed by the Supreme Court, and lesser courts are powerless to afford appellee any relief."

The appellee seeks to avoid the force of that opinion by stating that, in recent years, the pendulum of public opinion, as evidenced by the decisions of the Supreme Court and the Acts of Congress, has swung the other way and that now the Supreme Court has subscribed new limits for picketing which were not in effect at the time the Press Publishing Company case was decided. The cases relied on are Building Service Employees Int. Union v. Gazzam, 339 U.S. 532, 70 S.Ct. 784, 94 L.Ed. 1045; Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985; and Int. Brotherhood, C. W. & H. Union v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995. However at the time counsel for appellee wrote the brief in the instant case, the decision in the case of Boyd v. Deena Artware, Inc., 239 S.W.2d 86, 90, had not been published, and in which we said:

"This Court, in 1941, in Blanford v. Press Publishing Company, 286 Ky. 657, 151 S.W. 2d 440, indicated that it felt itself obliged to follow the decisions of the United States Supreme Court relating to this question; and, in that opinion, we set forth the principle that peaceful picketing of a business establishment is lawful and non-enjoinable even though there be no industrial dispute between the employer and his workers.

"Since that decision, the Supreme Court, in numerous cases, has reaffirmed that principle. Hughes v. Superior Court, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers, Union, Local 309 v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, and see cases cited, supra.

However, this Court is cognizant of a tendency on the part of the Supreme Court to permit the State to enjoin picketing where the declared public policy of the State, in preventing industrial disharmony in a particular situation, outweighs the fundamental right of the members of labor unions to impart their industrial complaint to society. That is to say, the tenor of recent Supreme Court decisions is to allow the State a reasonable discretion in adopting a policy forbidding peaceful picketing; and only where such discretion has been abused will an injunction against peaceful picketing be held to be an invalid deprivation of the right of free speech. As said by Mr. Justice Frankfurter in the case of International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Union Local 309 v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 775: 'The effort in the cases has been to strike a balance between the constitutional protection of the element of communication in picketing and "the power of the State to set the limits of permissible contest open to industrial combatants." (Citation.) A State's judgment on striking such a balance is of course subject to the limitations of the Fourteenth Amendment.'

"These decisions of course do not indicate an intention of the Supreme Court to depart from the fundamental principle that peaceful picketing is lawful in cases where the State has not declared a contrary public policy."

We do not believe that Section 336.130 of Kentucky Revised Statutes announces a public policy that prohibits peaceful picketing.

The facts in the instant case are even stronger, enforcing the conclusion that the Union had the right to picket the Joyce Coal Mining Company because the record indicates that this was not in fact the operation of a new mine, but was merely the operation of a new drift mouth to the same seam of coal, under circumstances where the court cannot accept the legal fiction of separate entities because of the change in name.

We are of opinion that the court acted erroneously insofar as peaceful picketing and assembly was enjoined.

Wherefore, the judgment is reversed.