DISTRICT UNION LOCAL 227, AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, George Kaelin and Harvey Hatfield, Appellants;

v.

Leopold FLEISCHAKER, t/d/b/a Fleischaker Company, Appellee.

Court of Appeals of Kentucky.

Oct. 2, 1964.

Rehearing Denied Dec. 18, 1964.

Herbert L. Segal, John F. Stewart, Louisville, for appellants.

Marshall B. Woodson, Jr., Robert L. Durning, Jr., Louisville, for appellee.

WADDILL, Commissioner.

Appellants, District Union Local 227, Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO, (hereinafter referred to as the Local), and two of its officers seek to reverse a judgment in favor of appellee, Leopold Fleischaker, d/b/a Fleischaker Company. The judgment was entered on a verdict awarding appellee $30,000 compensatory and $20,000 punitive damages based upon its finding that appellants had unlawfully damaged appellee's meat packing business pursuant to a formed conspiracy.

The Local has represented appellee's employees since 1945. During 1952, when appellants were attempting to organize the employees of F. B. Purnell Sausage Company, the officers of the Local sought to persuade appellee to cease supplying Purnell. When he refused to do so they became angry and told him, in substance, that he would regret his decision. Thereafter his relations with the Local became progressively worse with the result that his previously rising profits

and sales began to decline sharply, his attempts to negotiate new contracts with the Local were unsuccessful and his plant was struck during 1959. This action was filed in December, 1959, to recover damages pursuant to KRS 437.110 and 120 and appellee's business ceased operations the following September.

Appellants contend that the National Labor Relations Board, (hereinafter referred to as the Board), has exclusive jurisdiction of this controversy since it involves unfair labor practices. They rely on San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, wherein the jurisdiction of the California courts to grant damages arising out of an unfair labor practice was held to be pre-empted by the National Labor Relations Act, (hereinafter referred to as NLRA), even though the Board had declined to assert its jurisdiction. This so-called "no-man's land," wherein there was no forum that would grant redress to a party whose grievance fell short of the Board's self-imposed jurisdictional standards and was nevertheless outside the reach of state tribunals, was soon the subject of congressional action. See Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv. L.Rev. 1086. Five months after the San Diego opinion was rendered, Congress amended the NLRA in an effort to remedy this situation. Pub.L. 86–257, Title VII, Sec. 701(a), 73 Stat. 519; Conf.Rep. No. 1147, U.S.Code Cong. and Adm.News, 1959, Vol. 2, page 2509. These amendments became effective on November 14, 1959, which was prior to the institution of this action and are therefore applicable to the instant case.

As amended in 1959, 29 U.S.C. § 164(c) now provides:

"(1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of em-

ployers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

Recognizing that Congress has vested the Board with the fullest jurisdictional breadth permissible under the Commerce Clause (N.L.R.B. v. Reliance Fuel Oil Corp., 371 U.S. 224, 83 S.Ct. 312, 9 L.Ed.2d 279), and assuming that the instant action is based in part on conduct arguably within the regulatory powers of the Board and that appellee's business affected interstate commerce so as to bring it within the jurisdiction of the Board (29 U.S.C. § 160(a)), the determinative question for our consideration is whether the Board has declined to assert jurisdiction over a class of employers of which appellee is a member. See McCoid, Notes on a "G-String:" a Study of the "No-Man's Land" of Labor Law, 44 Minn.L.Rev. 205.

By decisions of November 14, 1958, the Board established a $50,000 annual inflow or outflow standard for asserting its jurisdiction over non-retail enterprises (Siemons Mailing Service, 122 NLRB No. 13) and a $500,000 annual gross sales standard for asserting its jurisdiction over retail enterprises (Carolina Supplies & Cement Co., 122 NLRB No. 17). The propriety of such standards was recognized in the Reliance case, (supra), and in N.L.R.B. v. Carteret Towing Co., 4 Cir., 307 F.2d 835. In the absence of any revision of these standards

after the effective date of the Sec. 164(c) amendment, we conclude that they are intended to determine whether the Board has exclusive jurisdiction to decide the issues in controversy. Comment, 108 U.Pa.L.Rev. 587 at 594–596; Cohen, Congress Clears the Labor No Man's Land, 56 Nw.U.L.Rev. 333 at 342, ft. nt. 42.

■ Applying these standards to the instant case we observe that appellee was engaged in an essentially non-retail business. But when we seek to discover the effect of his business on interstate commerce by the outflow or inflow yardstick the record is practically silent. Appellants did show that one customer used a portion of ground beef, sold to it by appellee, in Indiana, but the total purchases were less than $4,000 per year. Even if we considered appellee as a retailer, his gross sales were shown to have been substantially less than $500,000 since 1956. Under these circumstances it is apparent the Board has declined jurisdiction and the trial court properly held it had jurisdiction.

■ Appellants urge that they were entitled to a directed verdict on the ground that appellee failed to prove a claim against them. Appellee brought this action under common law conspiracy as implemented by KRS 437.110(2) which states as follows:

"No two or more persons shall confederate or band themselves together and go forth for the purpose of molesting, damaging or destroying any property of another person, whether the property is molested, damaged or destroyed or not."

For a violation of this section, KRS 437.120 provides for actual and punitive damages.

There was testimony showing that, subsequent to the disagreement between appellee and the officials of the Local in 1952, the Local refused to discuss the terms of the renewal contracts it entered into with appellee but did negotiate contracts with competitors of appellee which gave these com-

panies a substantial competitive advantage in lower resultant labor costs. Also, on at least one occasion, the officers of the Local called a meeting of appellee's employees during working hours thereby disrupting appellee's work schedule. Later, during a strike and picketing at appellee's plant by the members and officials of the Local in 1959, appellee's non-union employees were intimidated with threats and acts of personal violence, and acts of violence were committed against appellee's business property. From the testimony showing this course of conduct the jury could reasonably conclude that the Local and its officials unlawfully conspired among themselves to force appellee out of business and in pursuance thereto did cause damage to his business property. United Const. Workers v. New Burnside Veneer Co., Ky., 274 S.W.2d 787; United Mine Workers of America v. Meadow Creek Coal Co., 6 Cir., 263 F.2d 52.

■■ In connection with the above argument the Local insists that there was no proof of agency so as to make it responsible for the alleged wrongful acts of its officials. The officers of a union occupy a position of influence and responsibility and when they act by reason of their official capacities they do so as agents of the union. White Oak Coal Co. v. United Mine Workers of America, 6 Cir., 318 F.2d 591. In the instant case one or more officials of the Local were shown to have been involved in the aforementioned activities by which the appellee claims to have been damaged. The evidence is adequate to support the jury's determination of the Local's liability.

■ Appellants urge that this action cannot be maintained because the acts complained of constitute legitimate union activities under the state and federal constitutions. See Blanford v. Press Publishing Co., 286 Ky. 657, 151 S.W.2d 440. In the instant case the acts in question were found by the jury to be in furtherance of a conspiracy to damage appellee's business and hence it cannot now be validly contended that these acts were committed to achieve

a legitimate purpose of the Local or its members.

■ Appellants next contend that this action is barred by the statute of limitations. KRS 413.140 provides that actions for conspiracy shall be commenced within one year after a cause of action accrues. Appellants contend that appellee had a right of action upon the happening of each overt act and that no damages could be recovered for acts occurring more than one year before the filing of the instant action. It is the contention of the appellee that so long as damages flow, and this without regard to the time of formation or the commission of overt acts, the statute of limitations does not begin to run. We believe that a conspiracy which contemplates a series of overt acts is a continuing conspiracy and the statute does not commence to run until the last overt act performed in compliance with the objective of the conspiracy has been accomplished. Under this view the claim for damages was not barred by the statute since the last overt act occurred within one year of the filing of the action. Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570; also see, Schessler v. Keck, 125 Cal.App.2d 827, 271 P.2d 588.

■ The International Union, with which the Local is affiliated, and its officials were made defendants in this action in the circuit court. The Local contends that each defendant was entitled to three peremptory challenges, KRS 29.290. Whenever the defendants in an action have no antagonistic interests they constitute only one "party litigant" as that term is used in the statute. Cf. Roberts v. Taylor, Ky., 339 S.W.2d 653 and case cited therein. The trial court found that the interests of these defendants were not antagonistic. Since all the defendants asserted the common defense of no conspiracy, this finding was correct and the request for additional peremptory challenges was properly denied. Also, there is no prejudice shown by the sustaining of objections to some questions asked on voir dire as the parties were granted consider-

able latitude in testing the jurors' qualifications.

■ The appellants contend that the admission of evidence showing acts of violence and property damage which occurred during the strike was error. The complaint specifically alleged that such acts were committed in furtherance of the alleged conspiracy. It is our opinion that the trial court properly permitted the introduction of this evidence as it was competent for the purpose of showing the existence of the conspiracy as well as the damage that was inflicted upon appellee's business property.

■ Appellants contend the instructions did not adequately present the issues in the case. Four instructions were given, the first of which submitted the question of whether the appellants conspired to damage and did damage appellee's business. The second instruction defined conspiracy. The third instruction stated the amounts of damage that could be awarded appellee and the fourth instruction stated that nine or more jurors could write a verdict. We have carefully read the instructions and find that they correctly and succinctly cover the law applicable to this case.

■ The award of $50,000 is not excessive since it was rendered pursuant to an instruction permitting a maximum award of $200,000 which latter amount was supported by testimony showing loss of profits and a decrease in the value of appellee's business in excess of this amount.

■ Finally appellants complain that the verdict was reached by lot. The statements of two members of the jury were introduced in support of appellants' motion for a new trial. Both of these jurymen stated that after the jury had agreed that appellants were liable for damages the jurors had averaged their initial impression of the proper amount to award as damages. One of these statements reflected the impression that this quotient was binding; the other, by the foreman of the jury, disclosed that this amount was merely used to begin their deliberations on the question of damages and it was thought to be higher than the final award. The trial court's finding that the verdict was not arrived at by lot was amply supported by the latter statement. As was said in Murphy v. Cordle, 303 Ky. 229, 197 S.W.2d 242:

> " * * * where there is no antecedent agreement by the jury to be bound by the resulting quotient, or, independently, it adopts an amount equal to the quotient after it is ascertained, the verdict is good."

See also Louisville & N. R. Co. v. Marshall's Adm'x, 289 Ky. 129, 158 S.W.2d 137. We conclude the method employed by the jury in arriving at a verdict did not require the granting of a new trial.

We have considered each ground that has been urged by appellants and find no reversible error.

The judgment is affirmed.