Argued May 19; reversed July 6; petition for rehearing denied
September 27, 1949

# BAKER COMMUNITY HOTEL CO. *v.* HOTEL RESTAURANT EMPLOYEES & BARTENDERS LOCAL No. 161

207 P. 2d 1129

*James T. Landye,* of Portland, argued the cause for appellants. On the brief were Green, Landye & Peterson and Donald S. Richardson, of Portland.

*Blaine Hallock,* of Baker, argued the cause for respondent. On the brief were Hallock, Donald, Banta & Silven, of Baker.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

ROSSMAN, J.

This is an appeal by the defendants, a labor union and an official of the union, from a decree of the Circuit Court which enjoined them from picketing the place of business of the plaintiff and granted the latter judgment against the defendants for $1,000 compensatory damages, $1,500 punitive damages, and the costs of the suit.

Before the challenged decree was entered, the following course was taken: (1) A motion, filed by the appellants to strike some parts of the amended and supplemental complaint and to make other parts more certain, had been denied; (2) a demurrer, filed by the appellants on the grounds that (a) the court had no jurisdiction over the suit, and (b) the complaint did not state a cause, had been overruled; and (3) the appellants had declined to plead further.

The appellants present the following assignments of error:

1. "The court erred in denying defendants' motions directed against plaintiff's amended and supplemental complaint."

2. "Chapter 355, Oregon Laws 1947, has no application to the facts of this case as alleged in plaintiff's amended and supplemental complaint."

3. "Chapter 355, Oregon Laws 1947, was not complied with in this case in that there was no hearing held or determination of a collective bargain unit made."

4. "Chapter 355, Oregon Laws 1947, if applicable to the facts of this case, is void because of unconstitutionality."

For the purpose of brevity we will refer to the amended and supplemental complaint as the complaint.

It will be seen from the foregoing that our sole source of information concerning the facts of this suit is the complaint. The latter states that the respondent is engaged "in the conduct of a hotel and restaurant business" in the city of Baker "and has in its employ approximately forty employees." It also states that the appellant Hotel Restaurant Employees & Bartenders International League, Local 161, is a labor union and that the individual appellant is an official of the union. Paragraph III follows:

> "On and prior to May 21, 1948, a labor dispute existed between the plaintiff and its employees within the meaning of, and as contemplated by chapter 355, Oregon Laws, 1947, in that portion of plaintiff's employees, although as it developed not a majority, were members, or desired to become members of the said union, and desired that said union be designated as the exclusive bargaining agent of plaintiff's said employees. That at their instigation and request the said union, through the defendant C. M. Robbins, its secretary, and local managing head, submitted to plaintiff a form of contract designating the said union as the collective bargaining agent of plaintiff's said employees, and reciting that thereafter plaintiff should hire only members of good standing of the said defendant union. That plaintiff refused to sign such contract unless it was first established that a majority of plaintiff's employees desired to become members of said union and to have it act as their exclusive bargaining agent, and defendant thereupon proceeded to picket plaintiff's place of business in an effort to enforce compliance with said demand."

Paragraph IV avers that in order to ascertain the wishes of the majority of respondent's employees, an election was held May 10, 1948, during the course of which fifteen employees voted in favor of "affiliating

with the union and have it act as their exclusive bargaining agency, and twenty against said proposal, with three votes, for technical reasons, not counted." After the vote was taken, "the said minority group", so the complaint says, threatened to continue to picket the respondent's place of business unless their demands were met. Then comes Paragraph VI which reads as follows:

"In order to settle such dispute and to definitely fix and determine the rights of the parties, plaintiff, pursuant to the provisions of said Chapter 355, Oregon Laws, 1947, and on or about May 17, 1948, filed with the Commissioner of the Bureau of Labor of the State of Oregon, its petition, in due form, requesting the State Labor Commissioner to hold an election among plaintiff's employees to determine whether such labor dispute should continue or should be terminated. That thereupon, and on May 21, 1948, the said Commissioner, as by law required, held an election of plaintiff's said employees on the question of whether said labor dispute should be continued or should be terminated. That at such election the vote among plaintiff's employees was 13 for continuing the labor dispute and 25 for terminating it. That following such election, the said Labor Commissioner, on the said day, issued his certificate certifying the outcome of said election in words and figures as follows:

" 'This is to certify that such election was held this date and of thirty-eight employees of the Baker Community Hotel Company eligible to vote thirteen voted to continue the labor dispute and twenty-five voted to terminate the labor dispute.'

"That as a consequence of said election and certificate the said labor dispute is terminated and no longer exists; that such termination is effective for a period of one year from said date of May 21, 1948."

Paragraph VII says:

"That in spite of the fact that said matter has been formally settled and established as provided in said Chapter 355, the said defendants nevertheless refused to recognize the result of such election."

The "said defendants" are, of course, the appellants, that is, the union and its secretary. The paragraph goes on to say that the appellants "wilfully, wrongfully and maliciously resumed the picketing" with persons who displayed placards reading "Unfair to Organized Labor." The averments claim that the statement upon the placards "is wholly false and the plaintiff is not unfair to organized labor, does not discriminate, and has not discriminated against organized labor in any way, and was and is willing to deal with organized labor and with the said union, or any other labor organization, which a majority of its employees may desire." The pleading declares that "no other dispute of any kind between the plaintiff and its employes or the said union, or any other such organization, now exists or has existed during any of the times herein mentioned, excepting only the said dispute hereinabove set forth, which was and has been terminated by the said election, as aforesaid."

Paragraph VIII alleges that the picketing is inflicting substantial damage upon the respondent.

Paragraph IX says:

"With said labor dispute so terminated and no longer existing, the acts and conducts of said defendants in continuing said picketing are wholly unlawful and illegal and should be restrained * * *."

According to Paragraph X, the plaintiff has sustained compensatory damages to the extent of $1,000. Paragraph XI, after describing the appellants' con-

duct as willful and malicious, charges that the appellants should be assessed with $1,500 punitive damages.

■■ As we have said, the appellants, before filing their demurrer, challenged several parts of the complaint by a motion. The latter sought orders requiring that some averments be made more definite and that others be stricken. Although we believe that parts, at least, of the motion should have been allowed, we will not pause upon the first assignment of error, which is grounded upon the denial of the motion. The submission of a case upon a demurrer is an expeditious means of bringing a cause to decision. When a pleading meets with a demurrer, predicated upon a contention of insufficient facts, it is accepted as a true statement of the controversy, and thereupon the sole judicial labor that remains to be performed is to apply the law to the facts set forth in the pleading. But a party who elects to submit his case upon his pleading must make certain that his house is in order and that his pleading is couched in language which conforms to the established rules of pleading. Those rules do not tolerate conclusions. Conclusions are terms which do not delineate the facts; they go no further than to recite the pleader's reactions to, or the inferences he draws from, undisclosed facts. Conclusions are ignored when a pleading is tested by a demurrer. They are deemed by the courts as unsafe premises upon which to base judicially-awarded relief. When a pleading is tested in that manner, there are counted in its favor only the facts that are well pleaded. Although we said that a demurrer tests the pleading, it, in truth, tests the pleader's alleged facts, and in that test nothing passes as a fact unless it is expressed in "plain and concise language." A conclusion is not deemed plain language.

We will later revert to the complaint, the demurrer and the rule just stated.

We will now consider assignment of error No. II, which submits that "Chapter 355, Oregon Laws 1947, has no application to the facts of this case as alleged" in the respondent's brief. That chapter of our laws follows:

"Section 1. The commissioner of the bureau of labor shall determine whether or not a labor dispute shall be continued or terminated between an em-employer and his or its employes in the manner hereinafter provided.

"Section 2. An employer, any of his or its employes in a collective bargaining unit, or a labor union may petition the commissioner to hold an election by secret ballot at an appropriate place on the premises of the employer for the purpose of voting upon the continuation or the termination of a labor dispute and, upon the receipt of the petition, the commissioner shall hold said election forthwith. The eligibility of an employe to vote shall continue 30 days after termination of his employment. A labor dispute shall be deemed to exist when the petition is filed with the commissioner. If the petition so requests, the matter of the selection of a collective bargaining agent shall be included on the ballot. After said election has been held the results thereof shall be certified to the interested parties. The notice of and the method of conducting the election shall be in such form and manner as the commissioner shall determine, and the costs thereof shall be assessed against the party or parties petitioning for the holding of the same. Costs shall be based on actual costs plus ten dollars ($10) a day for the services of the commissioner or members of his staff.

"Section 3. If a majority of the employes in the collective bargaining unit vote to continue the labor

dispute, or if they choose a collective bargaining agent, the labor dispute shall be deemed to continue in existence, except as herein provided. If a majority of the employes vote against the continuation of the labor dispute, or if, having voted in favor of continuance and a collective bargaining agreement is entered into, the labor dispute shall be deemed to be terminated. A majority vote for the termination of and against the continuation of the labor dispute shall be binding for a period of one year from the date of the holding of the election.

"Section 4. A 'collective bargaining unit' shall mean all of the employes of an employer or those who are members of a single craft, or either of the aforesaid who are employed in separate departments or premises."

It will be observed that although the respondent depends upon (1) the mechanics which that statute affords for the termination of labor disputes "between an employer and his or its employes," and (2) the vote which the respondent's employes cast May 21, 1948, in an election held pursuant to the statute, the parties to this suit are not the employer and its employes, but the employer and a labor union.

The respondent makes no contention that the quoted statute repealed §§ 102-913 to and including 102-925, O. C. L. A., which are sometimes termed the Anti-Injunction Act or the Oregon Norris-LaGuardia Act. To the contrary, its brief says:

"The 1947 act did not repeal the Oregon Norris-LaGuardia Act but merely supplemented it in so far as concerns labor disputes beten employer and employees and provided a means whereby such disputes could be terminated."

Although the 1947 statute is concerned with labor disputes, it does not define the meaning of the term "labor

dispute.'' Section 102-925, O. C. L. A., being one of the paragraphs of the Anti-Injuction Act, defines that term.

Referring to a statement contained in the appellants' brief, the respondent's brief says:

"We also agree with this matter appearing on page 28 of the brief: 'The legislative history of chapter 355 shows definitely that the act did not seek to deal with labor disputes other than disputes between an employer and his or its employes. It did not seek to terminate in any way other labor disputes which exist by virtue of the definitions contained in the Oregon Norris-LaGuardia Act.' ''

Further, the respondent's brief declares:

"So the legislature of 1947, when enacting Chapter 355 confined it exclusively to but one type of labor dispute, to-wit, one between an employer and his or its employes * * *. It is our position that the purpose of Chapter 355 is to determine whether there shall be terminated or continued but one type of labor dispute, one between employer and his or its employes.''

We commend the frankness of counsel for the respondent. Their interpretation of the act was well justified, for the 1947 act is concerned only with labor disputes that exist between an employer and his employes. For instance, the first section of the act, which is the rubric for the entire act, says:

"The commissioner of the bureau of labor shall determine whether or not a labor dispute shall be continued or terminated between an employer and his or its employes in the manner hereinafter provided.''

That section conferred jurisdiction upon the commissioner over labor disputes only in the event the dis-

putes were between an employer and his employees. The rest of the act sets forth the procedure which must be employed in the termination of labor disputes after the commissioner's jurisdiction has been invoked. We quote again from the respondent's brief:

"We are here concerned with but one type of labor dispute, the type alleged in the complaint and admitted by the demurrer, to-wit: 'On and prior to May 21st, 1948, a labor dispute existed between the plaintiff and its employees. We are not concerned in this case with what appellants refer to as a labor dispute between an employer and the union, or between a union and an employe, * * *.'"

It will be recalled that the complaint says that the labor dispute, which was the subject-matter of the vote taken on May 21, 1948, was between the respondent and some of its employees. The appellants concede that on May 21, 1948, a labor dispute existed between the respondent and some of its employees. Since they contend that Oregon Laws, 1947, Chapter 355, is unconstitutional, they, of course, do not admit that it was capable of terminating the dispute just mentioned.

The appellants insist that the complaint itself shows that, in addition to the labor dispute mentioned in the preceding paragraph, three others existed on May 21, 1948. For instance, their brief says:

"A dispute between the employer and a union appears on the face of the Amended and Supplemental Complaint in this case. * * * It also appears on the face of the Amended and Supplemental Complaint that a dispute existed between employees and other employees and between the union and employees."

In short, according to the appellants, the complaint reveals the existence on May 21, 1948, of the follow-

ing labor disputes: (1) Between the respondent and some of its employees; (2) between the respondent and the appellant union; (3) between the union and some of the respondent's employees; and (4) between some of the respondent's employees and others of its employees.

■ Assuming the validity of the 1947 enactment, it afforded a means of terminating the labor dispute that existed between the respondent and its employees. It did not attempt to take jurisdiction over labor disputes that may have existed between the respondent and any who were not its employees.

Section 102-925, O. C. L. A., which defines the term "labor dispute", says:

"(1) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, or occupation; or have direct or indirect interests therein, or who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is (a) between one or more employers or associations of employers and one or more employes or associations of employes, * * * or (c) between one or more employes or associations of employes and one or more employes or associations of employes, or when the case involves any conflicting or competing interests in a labor dispute, as hereinafter defined, of persons participating or interested therein, as hereinafter defined.

* * *

"(3). The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing or seeking to arrange terms or conditions of employment, regardless of whether or not the

disputants stand in the proximate relation of employer and employe."

From all of the foregoing, it appears that one of the issues before us is: Does the complaint show that on May 21, 1948, the respondent was engaged in a labor dispute with the appellant union. As we have seen, the complaint states that on May 21, 1948, "a labor dispute existed between the plaintiff and its employees." Hence, that much is certain. The complaint continues by saying that the dissension had as its base the wish of some of the employees "to become members of the Union" and their further wish that said "Union be designated as the exclusive bargaining agent of plaintiff's said employees." After those wishes had been expressed and a dispute had arisen, the union entered the controversy, according to our interpretation of the complaint, for it says that while the dispute was under way the union submitted to the respondent a contract which, if accepted would have designated the union as the collective bargaining agent for the employees and would have required the respondent thereafter to hire only members of the union. Thus, the appellant union, upon taking sides with the dissident employees, made some demands in its own behalf. At that juncture the respondent demurred—it refused to sign the contract unless a majority of its members joined the union and, in addition, expressed a wish that the latter become their bargaining agent. The resulting stalemate was of short duration, for the paragraph goes on to say: "The defendant thereupon proceeded to picket plaintiff's place of business in an effort to enforce compliance with said demand." The term "defendant" in the quoted language obviously does not refer to the employees, but to the appellant union, and possibly to

the appellant official. Further, the other term "said demand" means the demand made by the union for a contract. Thus we see that the language of the complaint itself shows that a dispute existed between the respondent and the appellant union. The latter had chosen sides with the dissatisfied employees, and in its own favor insisted that the respondent sign the aforementioned contract.

Without further analysis, we express our conclusion that a dispute of the kind which common parlance terms a labor dispute had broken out between the respondent and the union. There remains for consideration the questions as to whether that dispute was of the kind which § 102-925, O. C. L. A., deems a labor dispute, and whether or not it was terminated before this suit was filed.

When the pickets appeared, the so-called informal election of May 10 was held. The vote was favorable to the respondent, but Paragraph V of the complaint says that it failed to terminate the dispute. The appellant union continued to press its demands. The dispute continued. Then resort was had to Chapter 355 of the 1947 act and to the method which it provides for the termination of labor disputes. As the complaint shows, it was the respondent who presented to the Commissioner of the Bureau of Labor the needed petition. A vote was taken, but since we have pointed out that Oregon Laws, 1947, Chapter 355, is not applicable to a dispute between an employer and a union, it is clear that the vote of May 21, 1948, which favored the respondent, did not terminate or in any way affect the dispute we have just described.

■ We come now to the question as to whether or not the dispute between the respondent and the appellants

was a labor dispute within the contemplation of § 102-925, O. C. L. A., for, if it was not, our Anti-Injunction Act is not applicable to this suit. *Peters v. Central Labor Council,* 179 Or. 1, 169 P. 2d 870, which was concerned with the section of our Anti-Injunction Act just mentioned, says:

"The vital question is whether the facts disclose a 'labor dispute' within the meaning of the Anti-Injunction Act of this state. (§§ 102-913 to 102-925, O. C. L. A.) If such dispute exists, no injunctive relief can be granted under the Act against peaceful picketing. * * *

"* * * It does not follow, however, that the union could not picket for the unionization of the plant even though none of its members were employees therein, as that is, according to the overwhelming weight of authority, a legal labor objective. Lauf v. Shinner & Co., supra; New Negro Alliance v. Sanitary Grocery Co., supra; Fur Workers Union v. Fur Workers Union, 308 U. S. 522, 84 L. Ed. 443, 60 S. Ct. 292; United States v. Hutcheson, 312 U. S. 219, 85 L. Ed. 788, 61 S. Ct. 463; American Federation of Labor v. Swing, supra; Levering & Garrigues Co. v. Morrin, 71 F. (2d) 284; Blankenship v. Kurfman, 96 F. (2d) 450; Donnelly Garment Co. v. International L. G. W. U., 99 F. (2d) 309; Taxicab Drivers Local Union v. Yellow Cab Operating Co., 123 F. (2d) 262; American Furniture Co. v. I. B. of T. C. and H. of A., 222 Wis. 338, 268 N. W. 250, 106 A. L. R. 335; Teller on Labor Disputes, Vol. 1, § 211; 31 Am. Jur. 940, § 215.

"Prior to the decision of the Swing case in the United States Supreme Court, it was held in the state of Washington that picketing for unionization could be enjoined where the union had none of its employees in the employ of the business picketed, but after such decision the court reversed its position and held as stated in O'Neil v. Building Service Employees International Union, 9 Wash. (2d) 507, 115 P. (2d) 662, 137 A. L. R. 1102, that 'It is

now lawful for a labor union to peacefully picket the place of business of an employer, none of whose employees is a member of the picketing union, for the purpose of coercing such employees, against their will, to join that union.' Also to the same effect, see The State of Washington on the Relation of United Brotherhood of Carpenters and Joiners v. The Superior Court, 24 Wash. (2d) 314, 164 P. (2d) 662, decided December 12, 1945, in which the court, referring to the O'Neil case, said: 'We accepted the interpretation by the United States supreme court that, under the constitution, peaceful picketing derives from freedom of speech, and that any restriction of peaceful picketing must be limited to the grounds upon which abridgement of the liberty of discussion is justifiable.' That the Supreme Court of Kentucky was likewise influenced by the Swing case, see Blanford v. Press Pub. Co., 286 Ky. 657, 151 S. W. (2d) 440.

"In Schwab v. Moving Picture Operators, supra, the authorities on such question, both federal and state, were well reviewed, and it is not deemed necessary to extend this opinion by reviewing them again. The Schwab case involved picketing for a 'closed shop'. The court recognized that the 'Supreme Court of the United States in construing and applying the Norris-LaGuardia Act has held that the federal courts are without jurisdiction to enjoin peaceful picketing where the demand of the union is that an employer unionize his shop, the employer being willing but his employees refusing to join the union'; citing Lauf v. Shinner & Co., supra; New Negro Alliance v. Sanitary Grocery Co., supra; and Fur Workers Union v. Fur Workers Union, supra. * * *."

The following is taken from 31 Am. Jur., Labor, § 367, page 1015:

"* * * In some instances, a labor dispute has been held to exist within statutes couched in the language of the Norris-LaGuardia Act even in the

absence of a controversy between employer and employees over terms and conditions of employment, as where an employer refused a demand of a union that he require his employees to become members as a condition of their continued employment, following a refusal of his employees to join the union or to abandon their own organization, or where a milk drivers' union picketed stores selling milk at prices below standard prices charged by dairies for milk delivered to consumers by wagon drivers. There is nothing in the declaration of policy in the Norris-LaGuardia Act that narrows the definition of a labor dispute as set forth therein."

We are satisfied that the passage just quoted from the Peters decision and the textbook correctly portray the applicable principles of labor law. A demand by a union upon an employer that he unionize his shop, followed by his refusal to do so, constitutes a labor dispute within the conception of § 102-925, O. C. L. A. This court, like all other state courts, has yielded to the superior authority of the Federal Supreme Court, and in so doing has held that peaceful picketing by a union for the purpose of achieving the unionization of a place of employment is lawful and cannot be enjoined by a court of equity. The complaint indicates that at least one of the objectives which the appellants' picketing sought to achieve was the unionization of the hotel and the restaurant which the respondent conducted. From all that we have so far considered, it appears that the picketing was lawful and that it was pursued in furtherance of a labor dispute within the embrace of § 102-925, O. C. L. A.

There remains for consideration the respondent's contention that it appears from the complaint that (1) the picketing was conducted "willfully, wrongfully and maliciously," and (2) the accusation against the re-.

spondent upon the pickets' placards, "Unfair to Organized Labor", was false and that, therefore, the attacked decree must be affirmed. We stated in a preceding paragraph the rules of pleading which we deem germane. We believe that the averments upon which the respondent depends are conclusions drawn by the respondent from other averments which were based upon the procedure authorized by Oregon Laws, 1947, Chapter 355. We have expressed our belief that that act is inapplicable to this suit and that the dispute which existed between the respondent and the appellant union was governed by § 102-925, O. C. L. A. It follows that there were applicable to the dispute the provisions enumerated in § 102-919, O. C. L. A. Accordingly, we must ignore the conclusions·of law of which the respondent seeks to avail itself in support of this contention.

We conclude that the challenged decree was entered in error. Before expressing our final conclusion, we wish to make it clear that we have decided nothing concerning the validity or invalidity of Chapter 355, Oregon Laws, 1947. The appellants attacked the constitutionality of that act, but since it is not applicable to this suit, there has been no occasion for considering those contentions. Had we undertaken in this case, which is not governed by the act, to determine its validity, everything said would have been dictum.

The challenged decree is reversed. The demurrer should have been sustained. The cause is remanded to the Circuit Court with instructions to sustain the demurrer. Costs and disbursements will be awarded to neither party.