Argued February 4, affirmed June 17, 1959

GILBERTSON *v.* McLEAN ET AL

341 P. 2d 139

*W. J. Masters,* Portland, argued the cause for appellant. On the briefs were Masters & Masters, Portland.

*D. S. Richardson,* Portland, argued the cause for respondents. On the brief were Green, Richardson, Green & Griswold, Portland.

LUSK, J.

This is an action to recover damages for unlawful picketing alleged to have been engaged in by the defendants. The circuit court sustained a demurrer to the amended complaint, plaintiff refused to plead further, and the court entered a judgment for the defendants from which plaintiff has appealed. The amended complaint (omitting formal parts and the prayer) reads:

"II.

"That plaintiff, Carmen A. Gilbertson, is, and at all times hereinafter mentioned, has been engaged in the operation of the restaurant business known as Paul Bunyan Burgers, located at 815 West Sixth Avenue in the City of Eugene, Lane County, State of Oregon.

\* \* \* \* \*

"IV.

"That defendants knowingly and intentionally interfered with the operation of plaintiff's business by causing persons to walk back and forth and picket and patrol on the sidewalks in front and along the side of plaintiff's place of business during the hours plaintiff was open for business, at all times between July 23, 1953, and May 12, 1955, with signs stating that plaintiff's place of business was unfair and by causing such persons to talk with the business invitees, customers and prospective customers of plaintiff with the purpose of influencing said business invitees, customers and prospective customers to cease and refuse doing business with the plaintiff, and by causing letters to be sent to customers and other persons with whom plaintiff was doing business for the purpose and intent of influencing said persons to cease doing business with the plaintiff.

## "V.

"That said conduct and picketing of plaintiff by defendants was conducted by the defendants intentionally for the purpose of reducing the income and profits of plaintiff's business and for the purpose of thereby forcing plaintiff to sign a contract with the Culinary Alliance and Bartenders' Union, Local 643, requiring that all of plaintiff's employees join the Union and for the purpose of compelling, intimidating, coercing and influencing employees of the plaintiff to join Culinary Alliance and Bartenders' Union, Local No. 643.

## "VI.

"Defendants committed the above acts willfully and maliciously.

## "VII.

"That the income and profits of plaintiff's business were reduced and plaintiff's business was injured and plaintiff has been damaged by reason thereof in the sum of $51,052.20.

## "VIII.

"That plaintiff is entitled to punitive damages in the amount of $5000.00."

The conduct of which the plaintiff complains is made unlawful by ORS 662.750, which reads:

"It shall be unlawful for any person directly or indirectly to compel, intimidate, coerce or discriminate against any employe in the exercise of said employe's free choice in selecting or rejecting a labor organization as the representative of employes for the purpose of collective bargaining, or directly or indirectly to compel, intimidate or coerce any employer or employe because employes of said employer, or of any other employer, have not selected a labor organization as their representative for said purpose. The word 'coerce' includes picketing.

Without limiting the foregoing unlawful acts, picketing for the purpose of compelling, intimidating, coercing or influencing an employe of any employer to join a labor organization shall be a violation of this section."

The foregoing section was Section 16 of Oregon Laws, 1953, ch 723, to which we shall hereinafter refer as the 1953 Act. In *Gilbertson v. Culinary Alliance et al*, 204 Or 326, 282 P2d 632, we considered at length the constitutionality of the 1953 Act and held the Act in all respects valid, except Section 17 thereof (ORS 662.770), which is not involved in this case. We further held Section 17 to be severable from the remainder of the statute.

The Gilbertson case was an appeal from the decree of the circuit court which, on review of a decision of the labor examiner, reversed the latter's cease and desist order issued against the same picketing which is involved in this case. We reversed the circuit court's decision and directed entry of a decree ordering the union to cease and desist from such picketing. 204 Or at 373.

As one ground for sustaining the demurrer, the constitutionality of ORS 662.750 as well as of the entire statute is again challenged by the defendants. We decline to re-examine that question. Further support for our decision may be found in *International Brotherhood of Teamsters v. Vogt, Inc.*, 354 US 287, 1 LEd2d 1347, 77 S Ct 1166 (June 17, 1957).

The essence of the complaint is that the defendants, intending to injure the plaintiff's business, picketed her restaurant for the purpose of coercing the employer to enter into a contract which would, in effect, compel her employees to become members of the union, and in order to force the employees to join the union, and

that the plaintiff was thereby damaged. All this is admitted by the defendants' demurrer. The conduct described is prohibited by ORS 662.750. As nothing to the contrary is alleged, it must be assumed that the picketing was peaceful.

■ The general rule of law upon which plaintiff relies is that harm intentionally done is actionable if not justified. *Schwab v. Moving Picture Operators,* 165 Or 602, 617-618, 109 P2d 600; *Heitkemper v. Central Labor Council,* 99 Or 1, 26, 192 P 765 (1921); Restatement of Torts, §§ 766, 775; 30 Am Jur 85-88, Interference §§ 43-47; 31 Am Jur 496, Labor § 140.

There are many adjudicated cases in which the principle referred to has been applied to picketing deemed unlawful or to other unfair labor practices, and the right to recover damages for injury caused thereby sustained. *Hanke v. Teamsters Union,* 33 Wash2d 646, 207 P2d 206, affirmed 339 US 470, 94 LEd 995, 70 SCt 773; *Adams v. Bldg. Service Employees etc., Local No. 6,* 197 Wash 242, 84 P2d 1021; *Safeway Stores v. Retail Clerks' Union, Local No. 148,* 184 Wash 322, 51 P2d 372; *Quinton's Market, Inc. v. Patterson,* 303 Mass 315, 21 NE2d 546; *Auburn Draying Co. v. Wardell,* 227 NY 1, 124 NE 97, 6 ALR 901. In the foregoing cases, no statutes authorizing the recovery of damages were involved.

In some of the states, statutes expressly provide for the recovery of damages or for the pursuing of all legal and equitable remedies by one injured as the result of unfair labor practices. See *Denver Council v. Shore,* 132 Colo 187, 287 P2d 267; *Edwards v. Grisham,* 339 Mich 531, 64 NW2d 715; and *Garmon v. San Diego Bldg. Trades Council,* 49 Cal2d 595, 320

P2d 473.① The Labor Management Relations Act, commonly known as the Taft-Hartley Act, 29 USCA § 141 et seq., enumerates a large number of unfair labor practices for labor organizations, id. § 158, and provides for the recovery of damages in the case of some violations, id. §§ 185, 187, but not of others.

■ Counsel for the defendants do not question the validity of the rule of law under consideration. Their contention is that the 1953 Act by implication forbids the recovery of damages for violation of its provisions, and that the exclusive remedy of a person claiming to have been injured or to be threatened with injury is by injunction or cease and desist order. We may observe here parenthetically that this question, so far as future application of the statute is concerned, is not of importance or interest, because the statute was repealed by the 50th Legislative Assembly and the repeal will become effective on August 5 of this year. See *Clackamas Broadcasters, Inc. v. Scherer,* 216 Or 471, 339 P2d 426. Repeal of the statute does not, of course, affect liability incurred for its violation during the time that it was in effect, and the question must be resolved.

■ The defendants rely on the accepted canon of statutory construction that "if the statute creating a new right where none exists before provides, also, a valid remedy for the enforcement of the right created,

---

① In this case the National Labor Relations Board had refused to take jurisdiction of a dispute arising out of the union's attempt to force the employer to sign a union contract. The Supreme Court of California sustained a judgment against the union for damages for picketing incident to this dispute and which was illegal under the laws of the state. The Supreme Court of the United States granted certiorari and reversed the California court's judgment because the state's jurisdiction was "displaced" by the Taft-Hartley Act. San Diego Building Trades v. Garmon (April 20, 1959), —— US ——, —— LEd 2d ——, —— SCt ——. It should be noted that the record in the present case does not disclose a dispute subject to the jurisdiction of the National Labor Relations Board. No suggestion of that kind has been made by counsel for either side.

the remedy thus given must be pursued in the enforcement of the right to the exclusion of any other remedy, provided it is an adequate one; * * *." 1 Am Jur 411, Actions § 12. Also cited are 18 Am Jur 139, Election of Remedies § 15, and 50 Am Jur 593, Statutes § 596.

In 1 CJS 974, Actions § 6, the rule is stated thus:

"Where a code or statute creates a new right or liability that did not exist at common law or under prior statutes, and also provides a specific remedy for the enforcement thereof, as a general rule such statutory remedy is exclusive, particularly when it is so denominated by the terms of the statute."

■ The 1953 Act provides that whenever any one is charged with engaging in any conduct declared by it to be unlawful a hearing may be had upon such charges before an examiner who, if the charges are sustained, may issue a cease and desist order. Such order is subject to review in the circuit court, and an appeal to the Supreme Court is also provided for. ORS 662.710, 662.720. Another section authorizes the circuit court upon petition to issue an appropriate order or decree for the enforcement of the order of the examiner. 662.730. ORS 662.780 reads in part, "Courts of competent jurisdiction shall have power to enforce the provisions of * * * [the 1953 Act] by appropriate order or decree." As indicated in *Gilbertson v. Culinary Alliance,* supra, the reason for including this section in the statute is obscure, but it is clear that it does not authorize the recovery of damages for the commission of acts made unlawful by the statute. There are no other remedial provisions. An examination of the state of the law prior to adoption of the 1953 Act

will be helpful in determining whether the specific remedies were intended to be exclusive.

Prior to the enactment of the Oregon Anti-Injunction Act, which was modeled after the federal Norris-LaGuardia Act (Oregon Laws 1933, ch 355, now codified as ORS 662.010-662.130), this court had held that where the primary purpose of picketing was to obtain recognition of the union and the relation of employer and employee did not exist, such picketing, even though peaceful, was illegal and should be enjoined. *Heitkemper v. Central Labor Council,* supra. One effect of the Anti-Injunction Act was to change the law as announced in the Heitkemper case by withdrawing from the courts the jurisdiction to issue injunctions in cases involving or growing out of a dispute over the recognition of a union claiming the right to represent the employees "regardless of whether or not the disputants stand in the proximate relation of employer and employee." ORS 662.010, 662.040. See *Baker Hotel v. Employee's Local 161,* 187 Or 58, 74, 207 P2d 1129; *Peters v. Central Labor Council,* 179 Or 1, 13, 169 P2d 870. The earlier decisions of this court construing the Anti-Injunction Act indicated that the statute affected procedural rather than substantive law. *Peters v. Central Labor Council,* supra at 10; *Starr v. Laundry Union,* 155 Or 634, 638, 63 P2d 1104. On that theory, it was at least arguable that the statute did not make peaceful picketing in a labor dispute, as defined by the legislature, legal, but merely forbade the courts to enjoin such picketing, and, therefore, that the remedy in damages was unaffected. Some courts have so held. See 146 ALR 1251; 31 Am Jur 816-818, Labor § 544. In *Schwab v. Moving Picture Operators,* supra, however, we suggested that the question whether our statute is to be regarded as a change in the sub-

stantive law or a mere withdrawal by the legislature of jurisdiction conferred by the legislature upon the courts was still an open one. This question was put to rest by *Baker Hotel v. Employees' Local 161,* supra, which was a suit to enjoin the defendants from picketing the plaintiff's place of business and for compensatory and punitive damages. The circuit court granted the injunction sought and a judgment against the defendants for $1,000 compensatory damages and $1,500 punitive damages. The purpose of the picketing was to compel the employer to yield to the union's demand that it sign a contract designating the union as the collective bargaining agent for the employees and requiring the employer to hire only members of the union. On appeal, this court reversed the decree of the circuit court and held that a demurrer to the complaint filed by the defendant should have been sustained because the complaint disclosed the existence of a labor dispute as defined in the Anti-Injunction Act. For present purposes, the significant feature of this decision is that it is a direct holding that in the cases to which the Anti-Injunction Act is applicable, not only may no injunction be issued to restrain peaceful picketing, but the remedy in damages is no longer available.

Thus, at the time of the adoption of the 1953 Act, there was no right to recover damages for engaging in conduct of the kind alleged in the complaint in this case. The 1953 Act made that conduct illegal, but in doing so it prescribed a remedy for enforcement of rights arising under the statute by the issuance of cease and desist orders which could be enforced in the courts. No other remedy was expressed, and none is to be implied, except possibly punishment for contempt. The implication is the other way. *Couchman v.*

*Prather,* 162 Ind 250, 70 NE 240; *Decorative Stone Co. v. Building Trades Council,* 23 F2d 426; *Cosmopolitan Trust Co. v. Cohen,* 244 Mass 128, 138 NE 711; *Jefferson County Farm Bureau v. Sherman,* 208 Iowa 614, 226 NW 182.

Counsel for plaintiff say that the rule relied on by the defendants is inappropriately invoked in this case, because her cause of action was not created by the statute; that it is a common law right of action which existed prior to the adoption of the 1953 Act. We quote from the plaintiff's reply brief:

"The statute merely removes the effect of previous statutes such as the Little-Norris-LaGuardia Act, which heretofore may have prevented appellant from seeking his common law remedy. As an example, ORS 164.830 is a criminal statute providing that any person who purposely and maliciously, and with intent to injure the person or property of another, sets off or explodes any explosive, shall be punished by imprisonment or by fine. If the complaint in this case alleged that defendants knowingly and intentionally set off explosives destroying appellant's stoves and ice cream machines, and that such act was done intentionally for the purpose of reducing the income and profit of plaintiff's business, and that such act was done willfully and maliciously, appellant would continue to argue that appellant had a cause against respondent for the tort involved in this act as this would amount to intentional harm and injury to the business or property of appellant, resulting in damage. Appellant would so contend, despite the fact that the statute might allow an injunction against such conduct in the future and despite the fact that the statute might provide a penalty for the conduct. The conduct constitutes a tort, for which a remedy is available at common law, regardless of the statute."

The foregoing is sought to be supported by citation

to *Greenfield v. Central Labor Council,* 104 Or 236, 192 P 783, 207 P 168 (1922) and other cases decided before enactment of the Anti-Injunction Act and before the change in judicial viewpoint regarding the constitutionality of labor legislation affecting labor relations in general and picketing in particular.

■■ The argument of the plaintiff seems to be based on the assumption that the legislature could not remove organizational picketing, as it is sometimes called, from the protection of the Anti-Injunction Act without going the whole way and restoring it to its full common law status as a tort. We do not believe that this is the correct view of the matter. If the legislature had the power, as we have decided that it had, to make that type of picketing legal, to deny persons injured by it resort to any remedy either of injunction or the recovery of damages, it had the power while declaring such picketing illegal to limit the remedy for enforcing the statute to injunction. There is a difference between peaceful picketing and the use of explosives, just as there is between peaceful picketing and picketing accompanied with violence. The legislature may exercise a wide discretion in determining what are and what are not legitimate labor objectives, and in sanctioning the use of picketing for the achievement of legitimate objectives so long as the picketing is peaceful; but it has no power to license violence or to deprive persons of traditional remedies for intentional injury caused by violent conduct. See 31 Am Jur 815, Labor § 542.

■ Had the 1953 Act been silent as to remedy, it might well have been considered proper to apply to this case the rule that intentional injury is actionable unless it is justified. But it is not silent in that regard, and

we think that the legislative intention was to make the conduct described in ORS 662.750 enjoinable and not to attach to it further legal consequences. The 1953 Act created a new right that did not exist previously under the Anti-Injunction Act, and the specific remedy provided for the enforcement of the statute is therefore to be deemed the exclusive remedy. This is so notwithstanding the fact that before the Anti-Injunction Act the type of conduct in question might have been actionable.

This construction of the statute is fortified by the legislative history. A reference to this history is found in our opinion in *Gilbertson v. Culinary Alliance,* 204 Or 326, 336, 282 P2d 632. In the bill as originally introduced and as passed by the house, the only provision authorizing a remedy was the following:

"Any person, association or corporation aggrieved by violation of any of the terms of this act, shall be entitled to injunctive relief from such violation or threatened violation and to recover any damages resulting from any such violation in any court in the state of Oregon having general jurisdiction."

In the senate the provisions creating the office of labor examiner and authorizing the issuance by the examiner of cease and desist orders and judicial review thereof were added by amendment. The provision which we have quoted giving a remedy by injunction or damages was dropped; the section above referred to which became ORS 662.780 was added, and with these and other amendments the bill was finally passed by both houses.

That the courts may and frequently do resort to the history of a bill during its passage as an aid to interpretation where language of doubtful import is

found in the statute is not open to doubt. *City of Portland v. Duntley,* 185 Or 365, 381, 203 P2d 640. As stated in 2 Horack's Sutherland Statutory Construction (3d ed) 484, § 5003, this history "has generally been the first extrinsic aid to which courts have turned in attempting to construe an ambiguous act." And "the rejection by the legislature of a specific provision contained in an act as originally reported has been held most persuasive to the conclusion that the act should not be so construed as in effect to include that provision, at least, where there is no basis for the assumption that the words omitted are deemed to be surplusage." 50 Am Jur 322, Statutes § 330. See also 82 CJS 753, Statutes § 355; 70 ALR 22-25. In *City of Portland v. Duntley,* supra, we held that the omission of a provision of the original bill before final passage was without significance for the reason, among others, that the act as finally adopted had no different meaning than it would have had if the omitted provision had remained in the bill. See 185 Or at 383.

We summarize a few among the numerous cases in which the courts have used such changes in bills during their progress through the legislature as reliable aids to interpretation.

*Pennsylvania R. Co. v. International Coal Co.,* 230 US 184, 57 LEd 1446, 33SCt 893, was an action by a shipper to recover rebates equal to those given other shippers. Congress had passed an act creating a right of action in such cases. The bill as originally introduced provided for recovery on the basis alleged, but this provision was omitted from the act as finally reported and passed by both houses, and in its place was a provision for the recovery of "damages." The change was held to be "conclusive" against plaintiff's position.

In *Carey v. Donohue,* 240 US 430, 60 LEd 726, 36 SCt 386, there was a question of the construction of a provision of the Bankruptcy Act defining the period prior to bankruptcy during which a transfer is a preference. The original bill as passed by the House provided that the period should "not expire until four months after the date of recording or register of the transfer, *if by law such recording or register is required* or permitted." (Italics added.) The Senate struck from the bill the words which we have italicized, and as thus limited the amendment was adopted by Congress. The court held that "There was no basis for the assumption that the words which the House of Representatives had desired to add were ultimately deemed to be surplusage," and that the court was "not at liberty to supply by construction what Congress has clearly shown its intent to omit."

In *State of Ohio v. McCollister,* 11 Ohio 46, the court construed a statute which provided that "No citizen of this state shall hold, *by appointment,* at the same time, or for the same period of time, more than one of the offices hereinafter mentioned," etc. (Italics added.) As the bill originally passed the house of representatives, it was in this form: "No citizen of this state shall hold, by election, appointment, or otherwise," etc. It was amended in the senate by striking out the words "election" and "otherwise," leaving it in the form above quoted. The court held that this legislative history removed any doubt that there might be on the question whether the statute applied to one holding two offices by election and not by appointment. Referring to the words deleted by the amendment, the court said:

"* * * Now, these words *alone* could not have been stricken out, because unnecessary, if the in-

tention was to make the offices imcompatible [sic], no matter how conferred. If this had been intended, the word *'appointment'* would also have been included. The evident intention of this amendment was to restrict, not to extend, the operation of the law. I am aware that every statute should speak for itself, and be construed by itself; but if there be doubt as to its construction, resort may be had to extraneous matters, and nothing of this kind is more satisfactory than the journals of the body by which it was enacted." 11 Ohio at 56.

In *Banner Milling Company v. State,* 191 NYS 143, 152, 117 Misc 33, the question was whether the words "or other property" in a statute relating to claims against the state for compensation or damages on account of property taken by the state included good will. As originally passed by the Senate, the statute contained the phrase, "rights, easements, good will, established business." This phrase was eliminated before final passage. The court held: "The legislative intent to exclude good will as an item of damage thus clearly is established."

*Small v. Small,* 129 Pa 366, 18 A 127, 15 AmStRep 723, involved the construction of a provision of the Pennsylvania Married Persons Property Act, which read: "Husband and wife shall have the same civil remedies upon contracts in their own name and right, against all persons, for the protection and recovery of their separate property, as unmarried persons." The question was whether this provision authorized a wife to sue her husband directly and in her own name for money received by him from her separate estate. Among other reasons for holding against such right was the fact that the bill as originally introduced into the senate contained the words "including each other" after the phrase "against all persons." The court

said, referring to the phrase "including each other": "This specific provision which put the change in the previous law into that precise, definite, and unquestionable form which its importance demanded, was struck out, and the section passed without it."

See, also, *Connole v. Norfolk & W. Ry. Co.,* 216 F 823; *Love v. Wilcox,* 119 Tex 256, 28 SW2d 515, 70 ALR 1484.

In the instant case it can hardly be supposed that on so vital a question as the remedy to be allowed for violation of the Act the substitution of cease and desist orders for injunction and the deletion of the remedy by damages was an inadvertence, and it would be difficult to support the notion that the legislature thought that the bill meant the same thing after the amendment as before. In our opinion the history of the bill conclusively demonstrates the legislative intent not to allow the recovery of damages for violation of the Act.

The demurrer to the amended complaint was properly sustained, and the judgment is affirmed.

McALLISTER, C.J., specially concurring.

I concur in the result of the majority opinion but dissent from that portion thereof that relies on the legislative history of Oregon Laws 1953, ch 723. In view of the turbulent history of that act as recited in part in *Gilbertson et al. v. Culinary Alliance et al.,* 204 Or 326, 282 P2d 632, we can only speculate why the legislature eliminated the provision authorizing the recovery of damages. The unreliability of the legislative history in this instance is illustrated by the statement of Senator Richard L. Neuberger made when the act was passed in the closing hours of the 47th legis-

lative assembly on April 21, 1953, as recorded in the Senate and House Journal of 1953, page 365:

"There is nothing sacred or magic about 100 days. I would rather stay here 101 days and consider major issues carefully. It does not make sense that we gave minor matters careful consideration on the 70th or 80th day and then we must rush through major and fundamental bills on the 100th day, to meet an illusory and artificial deadline. The people of this state expect us to know what we are passing when we enact basic legislative proposals. Yesterday we acted on proposals not yet printed. I shall not let my vote consent to such procedure today. For these reasons I have voted 'No' on suspending our rules."