Argued July 26, affirmed September 4, petition for rehearing
September 26, petition for review denied December 11, 1973

# CHEMICAL WASTE STORAGE AND DISPO-
SITION, INC., *Appellant, v.*
# DAY and MANN (No. 32-963), *Respondents.*
513 P2d 1193

*Paul M. Reeder,* Hillsboro, argued the cause for appellant. With him on the briefs were Reeder & Rapp, Hillsboro.

*Edward H. Warren,* Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell & Warren, Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

Plaintiff appeals from a judgment dismissing plaintiff's amended complaint after an order sustaining defendants' demurrer. The trial court set forth as its reason for sustaining the demurrer "that defendants are immune." A demurrer properly raises the issue

of immunity. *Smith v. Cooper,* 256 Or 485, 488, 475 P2d 78, 45 ALR3d 857 (1970).

The amended complaint sets forth the following facts, which for demurrer purposes are assumed to be true.

■ Plaintiff is an Oregon corporation doing business in Oregon. Defendant Day is the Director of the Department of Environmental Quality. Defendant Mann is the Director of the State Department of Agriculture.

■ For some time prior to June 30, 1972, plaintiff was engaged in transporting residues from Rhodia, Inc., Chipman Division in Portland, and from other chemical companies to a site owned by plaintiff in Lake County, Oregon, commonly known as Alkali Lake. Plaintiff was conducting such business under a State Department of Agriculture permit issued under the authority of ORS 634.330 (1969).

■ On or about December 8, 1971, the defendants drafted a directive, or order, which was served on plaintiff and on Rhodia, Inc., Chipman Division.① The

---

①                                    "December 8, 1971
"Chemical Waste Storage and Disposition,
   Inc., dba Chemical Waste, Inc.
Attention: Mr. Howard James Hunt, President
              7415 SW. 37th
              Portland, Oregon

Rhodia Incorporated
Chipman Division
6200 NW. St. Helens Road
Portland, Oregon

          "Re:  Alkali Lake Storage Site, Lake County, Oregon
                (within T30S, R23E and T24S, R20E)

     "Pursuant to the provisions of ORS Chapter 634, the State Department of Agriculture had issued a permit to Chemical Waste

thrust of the order was that plaintiff was to cease transporting chemical residues to its site in Lake County.

■ As a result of the order, Rhodia, Inc., Chipman Division, refused to allow plaintiff to transport its chemical residues to plaintiff's site. As a result plaintiff was damaged in the amount of $32,000.

■ Defendants Day and Mann knew, or in the ex-

Storage and Management, Inc., 418 SW. Washington Street, Portland, Oregon, under date of August 3, 1970, which permit expired June 30, 1971. Such permit authorized storage of pesticide waste residues at the above location. Chapter 699, Oregon Laws 1971 (H.B. 1931), enacted by the 1971 Legislature and effective June 30, 1971, transfers the authority to regulate the described waste materials from the Department of Agriculture to the Department of Environmental Quality, which transfer requires an interim period of joint authority until the Department of Environmental Quality implements said Act as therein provides.

"Accordingly, the State of Oregon, acting by and through the Department of Agriculture and the Department of Environmental Quality, pursuant to law, directs you immediately, until further notice to you, to comply with the following requirements:

"1. Cease bringing any waste materials to the Alkali Lake Storage Site and do not dispose of any waste materials now on hand there.

"2. Bring handling, surveillance and security of existing waste materials at the Alkali Lake Storage Site into strict compliance with the conditions of the permit issued by the State Department of Agriculture to Chemical Waste Storage and Management, Inc., 418 SW. Washington, Portland, Oregon, effective through June 30, 1971, including the pertinent conditions of the 'Outline of Operating Criteria for Loading, Transport, Inventory and Ultimate Disposition of Industrial Residues of Pesticides and other Hazardous Chemicals,' dated April 17, 1969, prepared by the Environmental Health Sciences Center, Agricultural Experiment Station, Oregon State University, Corvallis, Oregon. Copies of these documents are attached hereto as Exhibits 'A' and 'B' and hereby made a part hereof.

"3. Prepare and submit to the Department of Environmental Quality for review and approval, a specific and

ercise of due care should have known, that they had no authority as directors of their respective departments to issue the order, and the complaint further alleged that they did so "wickedly, wantonly and maliciously with the intent to require the plaintiff to submit to their personal demands and their personal will."[2]

■ The complaint also asserts that the defendants acted entirely outside the scope of their authority in issuing the order. Plaintiff urges that, since for purposes of the demurrer, all well-pleaded facts are ad-

---

detailed plan and time-schedule for effecting ultimate disposal of the accumulated pesticide waste residues presently stored at the Alkali Lake Storage Site, and for those materials proposed to be brought to the site.

"If you have any questions regarding this directive, please contact either Mr. Ben Allen, Assistant Director, Department of Agriculture, 635 Capitol St. NE., Salem, or Mr. Jack Weathersbee, Deputy Director, Department of Environmental Quality, 1234 SW. Morrison Street, Portland.

"Department of Agriculture
By: /s/ Irvin Mann, Jr.
    Director
Department of Environmental Quality
By: /s/ L. B. Day
    Director

"cc: Mr. Howard James Hunt
    Rt. 4, Box 207A
    Hillsboro, Oregon
    Chemical Waste, Inc.
    520 SW. Sixth
    Portland, Oregon
    Chemical Waste, Inc.
    4440 SW. 110th Ave.
    Beaverton, Oregon 97005
    Marcus K. Ward
    District Attorney
    Lakeview, Oregon 97630"

[2] Plaintiff requests $100,000 punitive damages.

mitted, we must take it as admitted that defendants did indeed act beyond the scope of their authority. On the contrary, the assertion is a conclusion of law, not a statement of fact. One of the questions of law to be resolved here, in fact, is whether the defendants' action was beyond the scope of their authority as directors.

> "* * * Conclusions are ignored when a pleading is tested by a demurrer. * * * When a pleading is tested in that manner, there are counted in its favor only the facts that are well pleaded. * * *" *Baker Hotel v. Employees Local 161,* 187 Or 58, 64, 207 P2d 1129 (1949).

*Coblentz v. State Ind. Acc. Com.,* 203 Or 258, 262-63, 279 P2d 503 (1955); *Mattoon v. Cole,* 172 Or 664, 669, 143 P2d 679 (1943).

The issue before us, on the facts admitted by the demurrer, is whether defendants were immune because of their public positions at the time they made the order. The question of immunity is sometimes said to depend on whether the action is ministerial or discretionary. *Smith v. Cooper,* supra, 256 Or at 495. Prosser states that acts which involve relatively less personal judgment are ministerial only, and that an officer may be liable for an improperly executed ministerial duty, regardless of his good faith. Prosser, Law of Torts 989-90, § 132 (hornbook series, 4th ed 1971). In attempting to distinguish between the two, the Supreme Court has said:

> "'* * * In defining these two classes of official duties, it is said that ministerial or mandatory duties, "are such as a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to, or the exercise of, his own judgment upon the propriety of the act being done," while

discretionary or judicial duties are "such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued," and that ministerial duties may be delegated while duties involving the exercise of discretion in the public weal cannot: 43 C.J., P 713. * * *' " 256 Or at 497.

*Antin v. Union High School Dist. No. 2,* 130 Or 461, 469, 280 P 664, 66 ALR 1271 (1929).

The act complained of here, the order, was not compelled by law or of the routine nature of a ministerial duty. On the contrary, the decision to issue the order involved a great deal of discretion. In particular, the decision as to the contents of the order was discretionary, since there were undoubtedly several approaches open to the defendants. Neither party contends otherwise.

■ The act complained of, even though discretionary, may give rise to liability if it is wholly outside the jurisdiction or authority of the official. Prosser, supra at 991. In *Antin v. Union High School Dist. No. 2,* supra, the court, in dicta, stated that

"* * * [a] public officer * * * is responsible to a private party for his own negligence or wrongful acts when acting beyond the scope of his authority * * *." 130 Or at 478.

And in *Utley v. City of Independence,* 240 Or 384, 402 P2d 91 (1965), a municipal judge was held to be without immunity when he issued a warrant for the plaintiff's arrest without first having received a sworn complaint as required by statute. The court stated that

"* * * when a judicial officer issues a warrant without a sworn complaint having been made,

there is no judicial business properly before him, and he acts as a private citizen. The unauthorized action is not, therefore, merely the erroneous exercise of colorable judicial power, but it is the usurpation of judicial power, and is not protected by immunity. [Citing cases.]" 240 Or at 390.

The question before us, then, is did the defendants have authority to issue the order of December 8, 1971?

The complaint does not state when plaintiff's permit to transport chemical wastes was issued. It must have been issued prior to June 30, 1971, since the statute under which it was issued was repealed effective on that date.[9] The order itself states that the permit was issued August 3, 1970.

The statute under which the permit was issued, ORS 634.330 (1969), stated that such permits expired on July 1 of each year. It is clear, therefore, that if that statute had remained in effect, plaintiff would have been disposing of wastes illegally after July 1, 1971. The repealed Act prohibited disposing of the wastes without a permit. ORS 459.510 (1971) replaces this prohibition with a new but similar prohibition which also requires a permit, there denominated a license. ORS 459.520 (1971) provides that ORS 459.-510 does not apply to anyone operating a disposal site on June 30, 1971, under a state permit. Plaintiff apparently qualifies under this exception. Under ORS 459.520 plaintiff would be allowed to continue operation until 60 days after the Environmental Quality Commission had approved regulations covering applications. Plaintiff would then be required to reapply. According to the complaint, the regulations had not yet been adopted.

---

[9] Oregon Laws 1971, ch 699, § 22, p 1587.

ORS 459.520, however, excepts plaintiff only from ORS 459.510. Defendants argue that, although exempt from the operations of ORS 459.510, the plaintiff was still subject to other regulatory statutes. Defendants state that their authority to issue the directive derived from other statutes.

■ Defendants cite a number of sections which illustrate that the State Department of Agriculture, after July 1, 1971, was and is still concerned with the problem of chemical residue disposal.[⑧] Defendant Mann relies mainly on ORS 634.350, which was amended by Oregon Laws 1971, ch 699, § 18.[⑨] That section states, in pertinent part:

"* * * The department is authorized to take all measures * * * necessary and proper to protect property * * * from the incorrect * * * disposal, other than that regulated under this 1971 Act * * * of pesticides, residues from the manufacture of pesticides or other dangerous chemicals. * * *

"* * * * * *"

[⑧] ORS 634.300, 634.310, 634.320.

[⑨] Oregon Laws 1971, ch 699, § 18:
"ORS 634.350 is amended to read:
"634.350. (1) The department is authorized to take all measures or to make any seizure or embargo necessary and proper to protect property, or the health or life of animals or humans, from the incorrect sale, storage, handling, transporting, disposal, other than that regulated under this 1971 Act, or use of pesticides, residues from the manufacture of pesticides or other dangerous chemicals. Any person who is aggrieved by or disputes such action, seizure or embargo of the department under the provisions of ORS 634.211, 634.233 to 634.235, 634.240, 634.250 [, 634.300 to 634.360 or under ORS 634.240] or this section, may appeal therefrom as authorized in ORS 183.480 [to 183.500]. An appeal shall not stay an action, seizure or embargo of the department unless the circuit court, after hearing, so orders.
"(2) The department is authorized to regulate the sale, labeling and use of devices and no person shall sell, label or use such a device unless it conforms with the rules of the department."

The 1971 Act referred to, ch 699, in effect transfers a regulatory power from the State Department of Agriculture to the Department of Environmental Quality, but provides for more restrictive regulation, relicensing of persons operating disposal sites, etc. It would appear, then, that plaintiff was no longer regulated by the State Department of Agriculture, but was under the jurisdiction of the Department of Environmental Quality at the time of the order. If so, then ORS 634.350 is not applicable. It could be argued that plaintiff was still under the State Department of Agriculture's jurisdiction, since it had not yet complied with the licensing requirements of the new Act; that is, it would still be under the old Act. But it was only by virtue of ORS 459.520 that plaintiff was allowed to continue operating after July 1, 1971. Therefore, we hold that ORS 634.350 did not authorize defendant Mann to issue the order.

The Department of Environmental Quality was given regulatory power over the disposal of pesticide wastes by ORS 459.410-459.690 (1971). At the very least the Department can:

■ Perform all functions necessary for the regulation of the operation and construction of disposal sites (ORS 459.430) ; and

■ Investigate, on its own motion, disposal sites which it feels are unsafe or not in compliance with regulations. After such an investigation it may make such findings and orders as it considers necessary without notice and hearing. Such orders might require changes in operations. (ORS 459.660.)

Plaintiff points out that the order states that plaintiff was to:

"* * * * *

"* * * Cease bringing any waste materials to the Alkali Lake Storage Site and * * * not dispose of any waste materials now on hand there.

"* * * * *."

Plaintiff suggests that the above language did not deal specifically with environmentally hazardous materials, which is all that the Department of Environmental Quality had authority to deal with. Further, the complaint itself does not state that the materials being stored were pesticide wastes or other regulated wastes. However, the order was attached to and made a part of the complaint. The order stated that plaintiff had been operating under a permit to store pesticide waste residues. Plaintiff states in its complaint that it was operating by authority of a permit issued under Oregon Laws 1969, ch 268, § 11 (ORS 634.330 (1969)), which dealt only with storing and disposing of pesticides and pesticide residues. We take the complaint to mean, therefore, that plaintiff was storing or disposing of pesticides or their residues. Furthermore, the order dealt only with storage of pesticide waste residues. The first paragraph of the order discusses plaintiff's permit to store pesticide residues. It then said, in effect: Accordingly, we direct you to cease bringing "any waste materials" to the site. We believe that "any waste materials" refers to the materials discussed earlier in the order, namely, pesticide residues, and not to literally any waste product whatsoever.

■ It is clear that defendant Day had the authority to issue the order without notice or hearing. The issuance of the order was a discretionary act. Under the rules set forth in *Smith v. Cooper,* supra, defendant Day is immune from suit on account thereof. *Accord, Jarrett v. Wills,* 235 Or 51, 383 P2d 995 (1963);

*Baker v. Straumfjord,* 10 Or App 414, 500 P2d 496, Sup Ct *review denied* (1972). We fail to see where plaintiff was harmed by the fact that defendant Mann also signed the order.

Affirmed.

FORT, J., specially concurring.

I concur in the result reached by the majority. However, I do not agree that the complaint states a cause of action against the defendant Mann independently of the question of damage. Exhibit "A" attached to the complaint contains the following:

"* * * * * *

"Accordingly, the State of Oregon, acting by and through the Department of Agriculture and the Department of Environmental Quality, pursuant to law, directs you immediately, until further notice to you, to comply with the following requirements:

"* * * * * *

"2. Bring handling, surveillance and security of existing waste materials at the Alkali Lake Storage Site *into strict compliance with the conditions of the permit issued by the State Department of Agriculture* to Chemical Waste Storage and Management, Inc., 418 SW. Washington, Portland, Oregon, effective through June 30, 1971, including the pertinent conditions of the 'Outline of Operating Criteria for Loading, Transport, Inventory and Ultimate Disposition of Industrial Residues of Pesticides and other Hazardous Chemicals,' dated April 17, 1969, prepared by the Environmental Health Sciences Center, Agricultural Experiment Station, Oregon State University, Corvallis, Oregon. Copies of these documents are attached hereto as Exhibits 'A' and 'B' and hereby made a part hereof.

"* * * * *." (Emphasis supplied.)

Oregon Laws 1971, ch 699, Section 2,[1] generally recognizes that a license must be obtained to dispose of environmentally hazardous waste and to operate a disposal site. Section 2a,[2] however, provides:

> "Section 2 of this Act does not apply to any person operating a disposal site on the effective date of this Act under a permit or license issued by any agency of this state until a license application therefor has been acted upon by the commission pursuant to this Act. If the operator of such a disposal site desires to continue to operate the disposal site, he must apply for a license under this Act within 60 days after the commission has adopted rules and regulations governing the form and contents of applications. If the license is refused, the licensee must cease operations within a time set by the commission that allows reasonable opportunity for the licensee to take such steps for the security or disposition of stored material as the commission deems necessary. The commission shall not direct removal of stored material unless an alternate site has been designated as suitable for disposal of it."

The effective date of ch 699 is June 30, 1971. The license issued to the plaintiff by defendant Mann as Director of the State Department of Agriculture remained in full force and effect. It is to be noted that ch 699 repealed ORS 634.330 (2), which would otherwise have terminated that license issued by the defendant Mann.

Chapter 699, Section 2a, continued the operating authority of the plaintiff, contingent upon other provisions of the Act.

The challenged order issued by defendants Day

---

[1] ORS 459.510.

[2] ORS 459.520.

and Mann in the portions quoted above required the plaintiff to bring its activities into compliance with the permit issued by the defendant Mann. I believe the defendant Mann had the right, and indeed the duty, to join in such an order, and therefore conclude that the complaint fails to state any cause of action against him also. This follows for the same reasons that the majority have set forth as supporting the dismissal of the complaint against the defendant Day.